[PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11730

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 2, 2011
JOHN LEY
CLERK

D. C. Docket No. 06-02163-CV-T-30-EAJ

LEWIS MARTIN MOTON, JR.,

Plaintiff-Appellant,

versus

CAPTAIN B.E. COWART,

Defendant-Appellee,

W.O. SHEETZ,
LT. PRIETO,

Defendants.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 2, 2011)

Before BARKETT and MARTIN, Circuit Judges, and HUNT,[*] District Judge.

_____

[*] Honorable Willis B. Hunt, Jr., United States District Judge for the Northern District of
Georgia, sitting by designation.

MARTIN, Circuit Judge:

Lewis Martin Moton, Jr.,[1] an inmate in Florida state prison, appeals the district court's grant of summary judgment in favor of Captain B.E. Cowart on Moton's retaliation claim under 42 U.S.C. § 1983. Moton argues that Cowart violated his First Amendment rights when she disciplined him for filing an inmate grievance and for speaking to her in a manner she found disrespectful. After thorough review, and the benefit of oral argument, we reverse the grant of summary judgment and remand for further proceedings.

## I. Factual Background

In early September 2004, Moton filed an informal inmate grievance alleging that a corrections officer violated his constitutional rights by telling him to "keep [his] eyes to [himself]." Cowart denied this grievance, and Moton submitted an additional grievance on September 25, 2004 accusing Cowart of running a "correctional atmosphere . . . akin to dictatorships in Third World countries, or the brutal and abusive relationship between cruel slave master and tortured slave."

In October 2004, Cowart had prison officials wake Moton at 2:00 a.m. and bring him to her to discuss the September 25 grievance. Cowart told Moton that

---

[1] Moton proceeded pro se before the district court and during the submission of initial briefs before this Court. We then appointed counsel, who submitted a second appellate brief on Moton's behalf.

she was considering issuing a disciplinary report against him because she found that grievance disrespectful. Despite Cowart's warning, Moton filed additional grievances asking Cowart to respond to his September 25 grievance and to clarify the statements she made to him when she woke him in the middle of the night.

The grievance at issue in this appeal is Moton's October 30, 2004 grievance, in which he wrote in large capital letters: "REMEDY: RETURN MY REQUEST DATED 10-15-04 WITH APPROPRIATE ANSWER AS REQURED [sic]." Upon receipt, Cowart told Moton that she planned to file a disciplinary report against him for disrespecting prison officials based on his October 30 grievance. The parties' accounts of the events that followed differ. Moton says that he told Cowart that "[his] lawyer would be hearing about this," while Cowart says that Moton told her that "she would be hearing from his lawyer." Cowart also contends that Moton said "You will answer these grievances." According to Cowart, Moton made these comments "in a threatening and demanding demeanor."

Cowart filed two disciplinary reports against Moton finding that he had violated two prison rules. One report accused Moton of violating, by filing his October 30 grievance, a prison rule prohibiting "[d]isrespect to officials, employees, or other persons of constituted authority expressed by means of words, gestures and the like." See Fla. Admin. Code r. 33-601.314, 1-4. The other

3

disciplinary report accused Moton of violating, on account of the comments he made to Cowart, a prison rule prohibiting inmates from making "spoken, written or gestured threats" against prison officials. See Fla. Admin. Code r. 33-601.314, 1-3.

Florida Department of Corrections ("FDOC") officials, W.O. Sheetz and Lieutenant Prieto, held a hearing and concluded that Moton was guilty of the infractions Cowart alleged in the disciplinary reports. They sentenced Moton to disciplinary confinement and a loss of sixty days of gain time. Moton appealed, and the FDOC held a rehearing. The FDOC concluded that Moton was not guilty of the infractions that Cowart alleged because Cowart's "statement of facts [does not] support the charge." At that point, Moton had already served about thirty days in disciplinary confinement.

Moton, proceeding pro se, sued Cowart, Sheetz and Prieto in federal district court, under 42 U.S.C. § 1983, for retaliating against him for exercising his First Amendment rights. The defendants filed a motion to dismiss, and the district court granted the motion as to Sheetz and Prieto. The court also dismissed Moton's claims against Cowart in her official capacity because Moton conceded that his claim was based on actions the defendants took solely in their "individual capacity." The court, however, denied the motion to dismiss as to Moton's claims

against Cowart in her personal capacity. In so doing, the court found that Moton had stated a cognizable claim against Cowart for which she was not entitled to qualified immunity.

The district court later, however, granted Cowart's motion for summary judgment. The court concluded on the more developed record that Moton failed to establish a causal connection between his grievance and Cowart's disciplinary reports. The court also granted Cowart summary judgment on the issue of compensatory damages because Moton failed to establish that he suffered any "physical injury, monetary loss, or other actual injury" related to his retaliation claim, as required by the Prison Litigation Reform Act. See 42 U.S.C. § 1997e(e) (preventing recovery "for mental or emotional injury . . . without a prior showing of physical injury").

## II. Discussion

Moton first asks us to reverse the district court's grant of summary judgment in favor of Cowart on his retaliation claim.[2] He argues that the district court

---

[2] In his counseled appellant's brief, Moton also asks us to reverse the district court's dismissal of his § 1983 claims against Officer Sheetz and Lieutenant Prieto. We lack jurisdiction over those claims. Federal Rule of Appellate Procedure 3(c)(1)(B) requires a notice of appeal to "designate the judgment, order or part thereof being appealed." "The timely filing of a notice of appeal is a mandatory prerequisite to the exercise of appellate jurisdiction." United States v. Grant, 256 F.3d 1146, 1150 (11th Cir. 2001) (quotation marks omitted); see also Torres v. Oakland Scavenger Co., 487 U.S. 312, 315, 108 S. Ct. 2405, 2408 (1988).

While we must construe the pleadings of pro se defendants liberally, "we nevertheless have required them to conform to procedural rules." Albra v. Advan, Inc., 490 F.3d 826, 829

5

improperly drew inferences in Cowart's favor and that genuine issues of material fact remain as to whether there is a causal relationship between his grievance and the disciplinary reports Cowart issued against him. This Court reviews <u>de novo</u> summary judgment rulings and draws all inferences and reviews all evidence in the light most favorable to the non-moving party. <u>Capone v. Aetna Life Ins. Co.</u>, 592 F.3d 1189, 1194 (11th Cir. 2010); <u>WSB-TV v. Lee</u>, 842 F.2d 1266, 1270 (11th Cir. 1988). Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Bennett v. Hendrix</u>, 423 F.3d 1247, 1249–50 (11th Cir. 2005). The moving party may meet its burden to show

---

(11th Cir. 2007) (quotation marks omitted); <u>see also</u> <u>Irwin v. Hawk</u>, 40 F.3d 347, 347 n.1 (11th Cir. 1994) (concluding that <u>pro se</u> prisoner procedurally defaulted his claim by not raising it in his appellate briefs and because district court did not address it separately in the particular order that was specified in the notice of appeal); <u>Rogero v. Noone</u>, 704 F.2d 518, 520 n.1 (11th Cir. 1983) (holding that <u>pro se</u> appellant abandoned claim by failing to mention it in notice of appeal and initial appellate brief). Although we also liberally construe notices of appeal in general, we have done so when it was clear that the appellant intended to appeal the claim and when the opposing party suffered no prejudice as a result of the omission of the claim from the notice of appeal. <u>See, e.g.</u>, <u>KH Outdoor, LLC v. City of Trussville</u>, 465 F.3d 1256, 1260 (11th Cir. 2006) (allowing claim not identified in notice of appeal when an earlier notice of appeal identified the claim and when both parties "fully briefed" it).

   Moton's notice of appeal provides that he appealed solely the district court's "March 3, 2009, final order denying/dismissing this Petitioner's Motion for Judgment on the Pleadings and Granting Respondent's Motion for Summary Judgment." Moton's claims against Sheetz and Prieto were dismissed in a separate order that the district court entered on May 19, 2008. He did not identify that order in his notice of appeal. Nor did Moton mention his claims against Sheetz and Prieto in his initial <u>pro se</u> brief. In that brief, the caption identified Cowart, not Sheetz and Prieto, as the sole appellee. Moton first mentioned his claims against Sheetz and Prieto in his counseled brief, which he filed a full year after filing his notice of appeal. We therefore lack jurisdiction over Moton's claims against Sheetz and Prieto.

6

that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552 (1986).

### a. Retaliation Claim

An inmate must establish three elements to prevail on a retaliation claim. Bennett, 423 F.3d at 1250. The inmate must prove that: (1) "his speech or act was constitutionally protected"; (2) "the defendant's retaliatory conduct adversely affected the protected speech"; and (3) "there is a causal connection between the retaliatory actions and the adverse effect on speech." Id. To establish causation, the plaintiff must show that the defendant was "subjectively motivated to discipline" the plaintiff for exercising his First Amendment rights. Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008). "[O]nce the plaintiff . . . establish[es] that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he . . . prevail[s] on . . . summary judgment." Id. (quotation marks omitted). The district court assumed without deciding that Moton had satisfied the first two elements of his retaliation claim. However, it granted summary judgment upon finding that

7

Moton failed to establish a causal relationship between his October 30 grievance and statements and Cowart's retaliatory action. Upon review, we conclude that the district court erred in granting summary judgment in Cowart's favor.

i.

Moton has shown that genuine issues of material fact remain as to the causal relationship between his grievance and the discipline Cowart imposed. The parties disagree about the significance of Moton's use of large upper case letters and as to whether the font size and case of the text in his grievance was the actual reason for the punishment. Cowart argued before the district court that she disciplined Moton for filing his October 30 grievance because his use of all large upper case letters violated the rule against disrespecting prison officials. See Fla. Admin. Code r. 33-601.314, 1-4. Moton, however, disputed Cowart's claim that his use of all large upper case letters could be construed as disrespectful and rejected Cowart's assertion that she punished him merely because he used large upper case print. First, Moton explained that he used such print in his grievance because he knew that Cowart had poor eyesight, because she wore glasses, and because he wanted to fill the remaining space on the grievance form. Second, Moton argued that Cowart punished him in bad faith in an attempt to intimidate him and dissuade him from filing additional grievances. The district court erred by automatically crediting

8

Cowart's assertions, finding that Moton "was disciplined because of the *way* he wrote his grievance." In the process the district court improperly construed the facts and drew inferences in favor of Cowart, the movant, instead of Moton, the non-movant. See Lee, 842 F.2d at 1270; Lane v. Celotex Corp., 782 F.2d 1526, 1528 (11th Cir. 1986) (At summary judgment, "the district court must not resolve factual disputes by weighing conflicting evidence . . . .").

Construing the facts in Moton's favor, as we must, we also conclude that the district court erred by finding that Cowart "reasonably" concluded that Moton's grievance violated the prison rule against disrespect because the grievance included large capital letters. Cowart argues that the use of large uppercase letters is disrespectful because it indicates an intent to yell. We disagree. While the contents of an inmate's grievance could violate a prison rule prohibiting disrespect toward prison officials, using large and upper case letters in a grievance, by itself, cannot. We therefore conclude that the district court erred in granting summary judgment in Cowart's favor based on her assertion that she disciplined Moton because he used large upper case print.

ii.

We next address Moton's statements to Cowart. We conclude that genuine issues of material fact remain as to the causal relationship between those

9

statements and Cowart's subsequent actions. The district court erred by finding that Moton's statement "could be reasonably construed as a spoken threat." See Fla. Admin. Code r. 33-601.314, 1-3. We conclude as a matter of law that an inmate's statement that he wants or plans to contact his attorney does not constitute a punishable "spoken threat." A contrary rule would chill the invocation and exercise of inmates' constitutional rights. See Al-Amin v. Smith, 511 F.3d 1317, 1334 (11th Cir. 2008) (holding that the practice of opening a prisoner's mail before delivering it "sufficiently chills, inhibits, or interferes with [the prisoner's] ability to speak, protest, and complain openly to his attorney so as to infringe his right to free speech"). While an inmate's constitutional rights are limited compared to those of an ordinary citizen, "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." Wolff v. McDonnell, 418 U.S. 539, 555–56, 94 S. Ct. 2963, 2974 (1974). "It is well established that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Al-Amin, 511 F.3d at 1333 (quotation marks omitted). Moton's statement about contacting his attorney is not inconsistent with his prisoner status or with legitimate penological objectives. See id. at 1334–35. We therefore conclude that the district court erred by granting summary judgment in favor of Cowart on

10

Moton's retaliation claim.

### b. Damages Claim

We also conclude that the district court erred when it <u>sua sponte</u> granted summary judgment in Cowart's favor on the issue of compensatory damages. Neither party sought summary judgment on that issue. "Although a court may <u>sua sponte</u> grant summary judgment on a claim not presented in a summary judgment motion, the court is required to give notice to the parties that it intends to address the claim on summary judgment." <u>Byars v. Coca-Cola Co.</u>, 517 F.3d 1256, 1264 (11th Cir. 2008). Here, the district court did not provide notice that it intended to rule on Moton's compensatory damages claim during the summary judgment proceedings. Thus, the district court erred by granting summary judgment on this issue.

### III.  Conclusion

We reverse the district court's grant of summary judgment in favor of Cowart on Moton's retaliation claim as well as on the issue of compensatory damages. We remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**