[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 30, 2011
JOHN LEY
CLERK

No. 10-15821
Non-Argument Calendar

_____

D.C. Docket No. 5:07-cv-02206-VEH


DEBORAH GARDNER,

Plaintiff - Appellant,

versus

AVIAGEN,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(November 30, 2011)

Before CARNES, HULL, and BLACK, Circuit Judges.

PER CURIAM:

Deborah Gardner filed a lawsuit against her former employer, Aviagen. She alleged, among other things, tangible employment action sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964.[1] The district court granted Aviagen's motion for summary judgment on those Title VII claims, finding that they were barred because Gardner did not timely file a charge of discrimination with the Equal Employment Opportunity Commission. Gardner contends that she did timely file that charge.

## I.

Aviagen is in the poultry business. Gardner began working for the company in 1992 at its hatchery in Elkmont, Alabama. There she removed toenails from chicks. After a year and a half, she moved to the company's egg depot in Ardmore, Alabama, where she worked on the production floor helping the company ship out eggs. In 1995 the company moved its egg depot—and

---

[1] Gardner also alleged (1) hostile work environment sexual harassment; (2) age discrimination and retaliation under the federal Age Discrimination in Employment Act; (3) age discrimination under the Alabama Age Discrimination in Employment Act; and (4) state law assault and battery. The district court granted summary judgment in favor of Aviagen on her hostile work environment, ADEA, and AADEA claims, and Gardner does not challenge those grants of summary judgment. Gardner's state law assault and battery claims survived summary judgment and are not at issue here.

Gardner—to Elkmont. At the Elkmont egg depot, Gardner worked as a computer associate. In that position she spent 70% of her time on the production floor, loading trucks with eggs and moving eggs from place to place. She spent the rest of her time doing clerical work.

Gardner alleges that Allen Dutton, her supervisor, sexually harassed her in April, May, and June 2006. She reported some incidents of that sexual harassment to the egg depot manager. On August 1, 2006, the assistant director of hatchery operations met with Gardner and told her that Aviagen was eliminating her position and that the company was reassigning her to the production department as a clerk. He also told Gardner that she would be "out the door" unless she accepted that reassignment. Gardner testified that she then discussed the reassignment with Dave Kennemer, Aviagen's human resources director, and told him that Dutton had sexually harassed her. On August 3, 2006, Kennemer personally delivered a letter to Gardner confirming the reassignment. That letter stated that, in the new position, she would be responsible for administrative duties, data entry, and clerical duties similar to those of the computer associate position and that her salary and benefits would remain the same.

Gardner refused the reassignment, and Aviagen fired her. Gardner filed a charge of discrimination with the EEOC on January 29, 2007, and the EEOC

3

issued a notice of the right to sue on September 7, 2007. She then filed this action raising a number of claims, two of which are relevant to this appeal. Claiming sexual harassment under Title VII, Gardner alleged that Aviagen eliminated her position and reassigned her to the production office because she did not submit to Dutton's sexual demands. She also claimed that Aviagen's elimination–reassignment decision, which was made after she complained about Dutton's sexual advances, violated Title VII's antiretaliation provision.

After discovery Aviagen moved for summary judgment. It argued that Gardner's sexual harassment and retaliation claims were barred because she did not timely file her charge of discrimination with the EEOC. The company also argued that summary judgment was proper on the retaliation claim because the elimination–reassignment decision was not adverse and, even if it was, Gardner had not offered evidence showing that Aviagen's proffered legitimate reasons for that decision were a pretext for illegal retaliation. In response Gardner argued that she did timely file the charge with the EEOC and that Aviagen's proffered legitimate reasons for the elimination–reassignment decision were pretextual.

The district court found that Gardner received unequivocal notice of Aviagen's elimination–reassignment decision on August 1, 2006—the day she met with the assistant director of hatchery operations. Title VII required her to file a

4

charge of discrimination with the EEOC within 180 days. She filed her charge of discrimination, though, 181 days later on January 29, 2007. The district court, therefore, concluded that her sexual harassment and retaliation claims were barred and granted summary judgment in favor of Aviagen on those claims. Gardner then filed this appeal.

## II.

We review <u>de novo</u> a district court's grant of summary judgment and draw "all inferences and review[] all evidence in the light most favorable to the non-moving party." <u>Morton v. Cowart</u>, 637 F.3d 1337, 1341 (11th Cir. 2011). "Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment of a matter of law." <u>Crawford v. City of Fairburn, Ga.</u>, 482 F.3d 1305, 1308 (11th Cir. 2007) (quotation marks omitted) (citing Fed. R. Civ. P. 56(a)). We also may affirm a grant of summary judgment on any ground supported by the record, even one not relied upon by the district court. <u>Edwards v. Niagara Credit Solutions, Inc.</u>, 584 F.3d 1350, 1354 (11th Cir. 2009).

## III.

A plaintiff may not sue for an unlawful employment practice under Title VII, such as sexual harassment or retaliation, unless she first files a charge of discrimination with the EEOC within 180 days of that unlawful employment practice. See 42 U.S.C. § 2000e-5(e)(1); Wilkerson v. Grinnel Corp., 270 F.3d 1314, 1317 (11th Cir. 2001). The 180-day period starts running when the plaintiff receives unequivocal notice of the unlawful employment practice. Grayson v. K-Mart Corp., 79 F.3d 1086, 1100 n.19 (11th Cir. 1996). The filing deadline, though, is extended to the next business day if the 180th day is a Saturday, Sunday, or federal holiday. See Fed. R. Civ. P. 6(a); EEOC Compliance Manual § 2-IV(A)(1) (2000) ("If the deadline falls on a weekend or holiday, it is extended until the next business day.").

Gardner and Aviagen dispute the date on which Gardner received unequivocal notice of the company's decision to eliminate her position and reassign her, but resolving that dispute is unnecessary. Aviagen argues that Gardner received notice on August 1, 2006, the date she met with the assistant director of hatchery operations, and we will assume that it is correct about that. The 180th day after that notice was January 28, 2007—a Sunday. Accordingly, Gardner's filing deadline was extended under Rule 6(a) and the Compliance Manual to Monday, January 29, 2007—the day on which she actually did file her

charge of discrimination with the EEOC. The charge having been timely filed, it was error to dismiss the Title VII claims on timeliness grounds.

IV.

Aviagen contends that we should affirm the district court's grant of summary judgment on other grounds. First, it argues that its elimination–reassignment decision was neither a tangible employment action nor a materially adverse action. Second, it argues that Gardner has not offered evidence showing that its alleged legitimate, nondiscriminatory reasons for that decision were a pretext for illegal discrimination.

A.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment resulting in sex-based discrimination with respect to the terms and conditions of employment can result "if the employee's refusal to submit to a supervisor's sexual demands results in a tangible employment action being taken against her." Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1245 (11th Cir. 2004). A tangible employment action refers to "a discharge, demotion, or undesirable reassignment." Id. at 1245 n.4.

Title VII's antiretaliation provision makes it unlawful for an employer to discriminate against an employee because that employee "has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show that she engaged in statutorily protected activity; she suffered a materially adverse action; and there is some causal relationship between the two events. Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008).

Aviagen contends that there is not a genuine issue of material fact about whether its elimination–reassignment decision was a tangible employment action or a materially adverse action because in the production office clerk position: (1) Gardner would have been responsible for clerical duties similar to the ones she performed as a computer associate; (2) she would have had the same pay and benefits; and (3) the new position was in the same building as her old position. We disagree.

The record shows that Gardner may not have been qualified for the new position. The job description of a production office clerk provides that the clerk must be computer literate in Microsoft Word and Excel and that "preparation, data-entry and maintenance of required spreadsheets" are essential functions. Gardner testified that she is a poor typer and does not know how to prepare and

8

maintain spreadsheets. Also the production office clerk position was primarily a clerical and administrative position whereas Gardner testified that she had spent most of her career at Aviagen performing manual labor. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 71, 126 S.Ct. 2405, 2417 (2006) ("[W]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case . . . ."); Hulsey, 367 F.3d at 1245 (defining a tangible employment action as "a significant hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" (quotation marks omitted)). We cannot affirm the district court's grant of summary judgment on this alternative ground.

B.

If a plaintiff establishes a prima facie case of Title VII retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Fairburn, 482 F.3d at 1308 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824–27 (1973)). "If the employer articulates a legitimate, nondiscriminatory reason for its actions, the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." Id. (quotation marks omitted). We do not, however, apply this

9

burden-shifting framework to Title VII sexual harassment claims. Johnson v.

Booker T. Washington Broad. Servs., Inc., 234 F.3d 501, 510–11 (11th Cir. 2000).

In its motion for summary judgment, Aviagen explained that it decided in February 2006, before any alleged sexual harassment occurred, to cut costs by eliminating either Gardner's position or the egg depot receptionist position. It chose to eliminate Gardner's position for two reasons. First, doing so would be more efficient—the egg depot receptionist had performed, and could perform, all of Gardner's clerical duties whereas Gardner had not performed all of the receptionist's duties, and existing employees could absorb Gardner's production floor duties. Second, Gardner had a history of conflict with coworkers. To avoid firing Gardner, Aviagen waited until July 2006 when the production office clerk position came available to implement its plan. It then eliminated Gardner's position and reassigned her to the production office. She was fired only because she refused that reassignment. The decision to cut costs by eliminating Gardner's position is a legitimate, nondiscriminatory reason for the elimination–reassignment decision. Therefore the burden shifted to Gardner to offer evidence that reason was a pretext for retaliation in violation of Title VII.

Gardner has met that burden because she produced evidence showing that the company did not actually eliminate her position. The egg depot receptionist

testified that after Gardner was fired Aviagen hired new employees to work on the production floor performing tasks similar to the ones that Gardner had performed before she was fired. Further, in response to Gardner's application for unemployment benefits, the company told the Alabama Department of Industrial Relations that (1) Gardner's position was not eliminated; (2) she was reassigned; and (3) she was fired only because she refused the reassignment. We therefore cannot affirm the district court's grant of summary judgement on the retaliation claim on this alternative ground.

## V.

For these reasons we reverse the district court's grant of summary judgment in favor of Aviagen on Gardner's Title VII tangible employment action sexual harassment and retaliation claims and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**