[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14477
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cv-02587-MSS-TBM

ROULA BAROUDI, M.D.,

Plaintiff-Appellant,

versus

SECRETARY, U.S. DEPARTMENT OF VETERANS AFFAIRS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 2, 2015)

Before MARTIN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff Roula Baroudi appeals the district court's order granting summary judgment to her employer, the Secretary of the Department of Veterans Affairs ("Defendant"), on her claims of (1) retaliation and (2) a retaliatory hostile work environment, arising under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e-3(a).  After careful review, we affirm.

## I.  Background

In 2001, Plaintiff, a Syrian-born Muslim woman, began working as a doctor in the infectious disease section of Defendant's Bay Pines medical facility.  Dr. David Johnson, the chief of the infectious disease section, was Plaintiff's supervisor.  Dr. Lithium Lin, the Chief of Medicine at Bay Pines during the relevant time period, was Johnson's supervisor and Plaintiff's second-level supervisor.  Pat Ellis, Elizabeth Simoes, and Jacqueline Walsch worked as nurse practitioners in the section.  Due to interpersonal issues, Ellis and Simoes primarily worked with Johnson while Walsch worked with Plaintiff.

Plaintiff testified that her relationship with Johnson was "courteous" and "respectful" prior to 2010, when she filed the first of several EEO complaints. However, she later described Johnson as showing subtle hostility toward her within a few months of her joining the infectious disease section.  Specifically, Plaintiff said that Johnson had not made her feel welcome in the section, did not acknowledge her as a doctor, and made decisions without consulting her.

2

Likewise, Johnson described his relationship with Plaintiff as "somewhat strained" from the beginning.

### A.    Plaintiff's First EEO Complaint

In a November 2009 performance evaluation, Johnson gave Plaintiff a "high satisfactory" rating for the preceding year.  The 2009 rating was lower than the "outstanding" designation Plaintiff had received in the two prior years, and resulted in a smaller salary increase.  After complaining to Lin, who told Plaintiff that he could not do anything about the rating, Plaintiff filed an EEO complaint in January 2010.  In her complaint, Plaintiff alleged that Johnson had discriminated against her on the basis of her gender, national origin, and religion.

According to Plaintiff, Johnson's mistreatment of her "got much worse" after she filed the EEO complaint.  Johnson became hostile toward Plaintiff, would not talk to her, and sent embarrassing messages to her through nurses.  In addition, Plaintiff claims that other employees in the section started to avoid her after she filed the complaint.  As a result, Plaintiff became severely stressed at work and withdrew her EEO complaint in March 2010.

### B.    Plaintiff's Second EEO Complaint

On March 18, 2011, Plaintiff filed a second EEO complaint, alleging that Johnson had discriminated against her on the basis of her gender, national origin, and religion, and retaliated against her based on her prior EEO activity.  In her

3

second complaint, Plaintiff cited sixteen incidents that allegedly occurred between February 2010 and March 2011 as evidence of the discrimination and retaliation she experienced.  For example, Plaintiff claimed that shortly after she filed her complaint, Johnson spoke to her in a threatening manner, raised his voice, and stared at her during a conversation about his plan to take away her Tuesday morning clinic.  Plaintiff also claimed that her locked office was searched, and her papers were packed and taken away, while she was on annual leave in July 2010. When Plaintiff returned, Johnson told Plaintiff, in a threatening tone, that it was illegal and violated hospital policy for her to leave patient information lying around in her office.

Other incidents cited in support of Plaintiff's second EEO complaint included Johnson:  downgrading Plaintiff's performance rating in December 2010 in a review that included "intimidating" comments suggesting that Plaintiff should have more opportunities to instruct residents and establish her own research program, harassing Plaintiff via email about a "missing" camera he knew she properly possessed, removing a program from Plaintiff's computer, speaking to Plaintiff in a "very rude and very demeaning, very belittling manner," forcing Plaintiff to choose between two offices and assigning her the smallest office, forcing Plaintiff to remove a post-it note from her door and a towel covering her door threshold because they were fire hazards, ignoring Plaintiff's emails and

4

questions, accusing Plaintiff of taking pictures of patients without consent, criticizing Plaintiff's care of patients in two group meetings, falsely accusing Plaintiff of training deficiencies, and falsely telling Plaintiff she could not return to work without a doctor's note after being out on sick leave.

### C.    Plaintiff's Third EEO Complaint

While the investigation of her second EEO complaint was ongoing, Plaintiff filed a third EEO complaint in January 2012.  In her third complaint, Plaintiff cited eight allegedly retaliatory incidents that occurred between July 2011 and December 2011.  One such incident was Plaintiff's November 2011 performance review in which her proficiency rating was downgraded to "satisfactory."  The other incidents included Johnson:  discussing Plaintiff's patients in two group meetings, finalizing and distributing an on-call schedule without Plaintiff's knowledge, and ignoring two of her emails.  In addition, Plaintiff complained that she found out by accident that her request for one day of annual leave was denied, that she similarly learned by accident about a meeting between the infectious disease section and pharmacy staff, and that she was not told that a blood test was no longer available for her to order for her patients.

### D.    Plaintiff's Fourth EEO Complaint

In August 2012, Plaintiff filed her fourth EEO complaint.  Plaintiff's fourth complaint was based on twenty-five incidents of discrimination and retaliation that

5

allegedly occurred between April 2012 and August 2012. These incidents involved several additional complaints about office assignments, unspecified slurs about Plaintiff's national origin and religion, failure to timely notify Plaintiff about or include her in meetings, coaching staff to tell EEO investigators that they did not remember any facts about Plaintiff's prior claims, excluding Plaintiff from group emails, placing nonsense comments on Plaintiff's charts, and taking down Plaintiff's medical poster.

E.    Plaintiff's Lawsuit

Plaintiff filed this action against Defendant in November 2011, asserting claims of retaliation and national origin, religious, and gender discrimination. She subsequently amended her complaint to add an additional claim for a retaliatory hostile work environment. The district court granted summary judgment to Defendant on all of Plaintiff's claims. Plaintiff appealed the district court's ruling as to her retaliation and retaliatory hostile work environment claims.[1]

## II. Discussion

A.    Standard of Review

We review *de novo* the district court's grant of summary judgment. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012).

---

[1] Plaintiff did not appeal the district court's grant of summary judgment in favor of Defendant on her discrimination claims. Accordingly, she has abandoned those claims. *See Access Now v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

6

In conducting our review, we draw all factual inferences and view all evidence "in the light most favorable to the non-moving party." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). Summary judgment is only appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

B.    Retaliation

Title VII prohibits retaliation against an employee for opposing a discriminatory employment practice or for participating in an investigation or proceeding concerning employment discrimination. 42 U.S.C. § 2000e-3(a). Where there is no direct evidence of retaliation, as in this case, we utilize the *McDonnell Douglas* burden-shifting framework to analyze an employee's retaliation claim. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1973)). Under this framework, the employee must first establish a prima facie case of retaliation by showing that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is a causal relationship between the two. *Id.* The employer then has the opportunity to articulate a non-retaliatory reason for its action, which can be rebutted with evidence of pretext. *Id.* at 1181-82.

7

To meet the above causation requirement, the plaintiff must show that the adverse action would not have occurred "but for" the protected activity. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. ___, ___, 133 S. Ct. 2517, 2534 (2013). Temporal proximity between the protected activity and the adverse action can establish causation if it is "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). We have held that a delay of three to four months is too long, as a matter of law, to establish causation by temporal proximity. *Id.* However, such a delay is not fatal where the plaintiff presents "other evidence tending to show causation." *Id.*; *see also Wascura v. City of S. Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (emphasizing that the plaintiff had introduced "virtually no evidence of a causal connection" aside from temporal proximity).

In granting summary judgment, the district court determined that the only adverse actions Plaintiff suffered were her lowered proficiency ratings in December 2010 and November 2011.[2] The court held that Plaintiff could not establish a causal connection between the lower ratings and any of her protected activity because the temporal proximity was not "very close." In support of its holding, the court noted that there was an eleven month gap between Plaintiff's January 2010 EEO complaint and the December 2010 rating, and an eight month

---

[2] Plaintiff does not challenge this conclusion in her initial brief, but she argues in her reply that the district court applied the wrong legal standard in determining which actions were adverse. Because Plaintiff raised this argument for the first time in her reply, we do not address it. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

gap between her March 2011 EEO complaint and the November 2011 rating. We agree with the district court that the time lapse between Plaintiff's protected activity and Defendant's adverse actions was too long, as a matter of law, to establish causation by temporal proximity. *See Thomas*, 506 F.3d at 1364.

On appeal, Plaintiff argues that the district court failed to consider "other evidence" of causation. Specifically, Plaintiff contends that the district court ignored a series of ongoing retaliatory acts by Johnson that allegedly occurred between February 2010 and November 2011. The retaliatory acts cited by Plaintiff include Johnson's threatening to take away Plaintiff's Tuesday morning clinic, speaking to her in a rude manner, ordering her to choose between two offices, and ignoring her emails, all of which allegedly began within a few months of Plaintiff filing her first EEO complaint in January 2010. They also include the directive for Plaintiff to remove a post-it note and towel from her door in April 2010, and the unlocking of and removal of papers from Plaintiff's office in July 2010.

A causal relationship might reasonably be inferred from a series of adverse actions that commenced immediately after a plaintiff engaged in protected activity. *See Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998). However, the intervening retaliatory acts must be material, or significant, to suggest a causal link. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006) ("The antiretaliation provision protects an individual not from all

9

retaliation, but from retaliation that produces an injury or harm . . . . We speak of *material* adversity because we believe it is important to separate significant from trivial harms."). That simply is not the case here. Whatever was said in Plaintiff's conversation with Johnson about the Tuesday clinic, Plaintiff acknowledges that the clinic was immediately reinstated as soon as she complained about it. Most of the other incidents that allegedly occurred shortly after Plaintiff filed the January 2010 EEO complaint, including the ignored emails, the unsatisfactory office assignments, the post-it note and towel directive, and the general rudeness, are more akin to the "petty slights or minor annoyances that often take place at work" than adverse actions. *Id.* at 68. These incidents do not support causation. *Id.*

As to the July 2010 search of, and removal of papers from, Plaintiff's office, this incident occurred nearly six months after Plaintiff filed the January 2010 EEO complaint. Moreover, the undisputed evidence in the record conflicts with Plaintiff's characterization of the incident as retaliatory. Johnson testified, and Plaintiff does not dispute, that her locked office was entered due to issues with flooding. Plaintiff also does not dispute that patient files and records were strewn all over her office, and that hospital policy required the files to be secured once her office was unlocked.

Plaintiff also argues that Lin's testimony shows causation, because it conflicts with Johnson's explanation for Plaintiff's lowered proficiency rating.

10

When asked to explain why Plaintiff lost her "outstanding" rating, Johnson testified that Lin "basically" told him to lower everyone's proficiency ratings. Lin denied ordering Johnson to lower all proficiency ratings, but testified that he emphasized to Johnson that ratings must be "honest" and "accurate" assessments of the employee's performance. Confronted with Lin's testimony, Johnson explained that he "read between the lines" and interpreted Lin's guidance as a directive to lower all employee ratings, including Plaintiff's. According to Johnson, Lin would not have given any guidance concerning performance ratings if he had wanted everything to stay the same.

Contrary to Plaintiff's argument, Lin's testimony does not conflict with Johnson's or otherwise suggest a causal link between Plaintiff's EEO complaints and her downgraded proficiency rating. In addition, Johnson's explanation for the lower rating is supported by the record. Simoes, Ellis, Walsch, and even Johnson himself all received lower proficiency ratings during the relevant time period. Consistent with Johnson's explanation, Ellis, Simoes, and Walsch testified that they were told the lower proficiency ratings were applied across the board in furtherance of a new policy from management.

In short, neither the allegedly retaliatory ongoing acts cited by Plaintiff, nor Lin's testimony, constitutes "other evidence" of causation. Moreover, the time lapse between Plaintiff's protected activity and the alleged adverse action is too

11

long to establish causation by temporal proximity.  Accordingly, the district court correctly granted summary judgment to Defendant on Plaintiff's retaliation claim.

### C.    Retaliatory Hostile Work Environment

To prevail on her retaliatory hostile work environment claim, Plaintiff must show that:  (1) she engaged in protected activity, (2) after doing so, she was subjected to unwelcome harassment, (3) her protected activity was a "but for" cause of the harassment, and (4) the harassment was sufficiently severe or pervasive to alter the terms of her employment.  *Gowski v. Peake*, 682 F.3d 1299, 1311-12 (11th Cir. 2012).  The fourth prong has both an objective and a subjective component.  *Id.* at 1312.  That is, the employee must "subjectively perceive" the harassment as severe or pervasive enough to change the terms of her employment, and the harassment must result in an environment that a reasonable person would find hostile or abusive.  *Id.*  In evaluating the objective component, we consider the frequency and severity of the retaliatory conduct, as well as whether it (1) is physically threatening or humiliating, and (2) unreasonably interferes with the employee's job performance.  *Id.*

In granting summary judgment on this claim, the district court concluded that Plaintiff's alleged harassment was not sufficiently severe or pervasive to alter the terms of her employment.  We agree with this conclusion.  Although Plaintiff alleged numerous retaliatory incidents, most of the incidents involved petty office

squabbles and communication issues that are common in any workplace. For example, Plaintiff complained that Johnson excluded her from and did not respond to emails, made unfavorable office assignments, failed to inform her of meetings or that a medical test was no longer available, denied her leave on one occasion, removed programs from her computer, and directed her to remove a note and towel from her door. These types of incidents, which the district court accurately described as "ordinary tribulations" of the workplace, are not sufficiently severe to support a hostile work environment claim. *See id.*

Plaintiff cited a few occasions when she felt particularly upset and humiliated, specifically when (1) Johnson proposed canceling her Tuesday clinic, (2) her office was unlocked and her papers removed in July 2010, and (3) her patients were discussed during section meetings. There is no evidence to suggest that any of these incidents was sufficiently severe to change the terms of Plaintiff's employment. As discussed, Plaintiff concedes that her Tuesday clinic was immediately reinstated, and that her office was unlocked and the papers therein secured as a result of flooding issues. Plaintiff further admits that it was standard practice to discuss patient treatment during meetings, and that neither her name nor the patient's name was mentioned in the allegedly offensive discussions.

Plaintiff claimed more generally that Johnson spoke to her in what she perceived to be a demeaning, threatening, and belittling manner on a few

13

occasions.  However, Plaintiff did not offer anything more than her own vague and conclusory statements to support this claim.  A reasonable juror could not conclude, based on these statements alone, that Plaintiff's work environment was objectively hostile and abusive.  *See Gowski*, 682 F.3d at 1312.

### III.  Conclusion

In sum, the district court did not err in granting summary judgment to Defendant on Plaintiff's retaliation claim.  Plaintiff did not establish causation either by showing "very close" temporal proximity or presenting other evidence suggesting a causal link between her protected activity and Defendant's adverse actions.  Neither did the district court err in granting summary judgment on Plaintiff's retaliatory hostile work environment claim.  Based on the evidence in the record, no reasonable juror could find that Plaintiff's work environment was sufficiently hostile and abusive to support such a claim.  Accordingly, we affirm the district court's grant of summary judgment in favor of Defendant on both of Plaintiff's claims.

**AFFIRMED.**