[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14114
Non-Argument Calendar
_____

D.C. Docket No. 5:12-cv-03657-CLS

DONNETTA M. BLOW,

                                        Plaintiff - Appellant,

versus

VIRGINIA COLLEGE,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 24, 2015)

Before HULL, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Donnetta Blow appeals the district court's order granting summary judgment on her Title VII and 42 U.S.C. § 1981 race discrimination and retaliation claims in favor of her former employer, defendant Virginia College. After careful review, and for the reasons set forth below, we affirm.

I.

The district court's August 14, 2014 order granting summary judgment in favor of Virginia College contains a thorough recitation of the facts in this case. We recount here only those facts necessary to the disposition of Ms. Blow's appeal.[1] Virginia College, a private higher education institution with a campus in Huntsville, Alabama, hired Ms. Blow, a black woman,[2] as a receptionist in 2008. Later that year, she was promoted to Admissions Associate and was responsible for recruiting applicants for Virginia College. As an Admissions Associate, Ms. Blow was tasked with answering telephone and walk-in "leads," or potential applicants, and converting these leads ultimately into enrollments.

Virginia College evaluated its Admissions Associates' performance weekly through a quantitative (how many leads) and qualitative (effectiveness in communicating with leads) analysis. Associates who underperformed for the week earned a "strike," and those who earned three strikes in consecutive weeks were

[1] Moreover, because we are reviewing the district court's grant of summary judgment, we recount the facts in the light most favorable to Ms. Blow. *See infra* section II.

[2] Although the terms "African-American" and "Caucasian" might be preferred, we use the terminology Ms. Blow uses in her briefs to describe her race and that of her former coworkers.

2

placed automatically on a Performance Improvement Plan ("PIP").  An associate on a PIP was expected to show steady improvement on both qualitative and quantitative measures or else risked termination.

In June 2010, a white woman named Angela Beck became Admissions Manager and Ms. Blow's direct supervisor.  The following month, Ms. Beck rated Ms. Blow's performance well.  But, in the fall, Ms. Blow's performance began to lag.  She received three consecutive strikes for the weeks of October 24, October 31, and November 2, 1010, which resulted in her placement on a PIP.  While on the PIP, Ms. Blow received strikes for the weeks of November 22, 2010, as well as February 27, March 13, April 10, and April 24, 2011.  Because these strikes did not occur on three consecutive weeks, Ms. Blow was not placed immediately on a second PIP, but she did receive a substandard annual performance evaluation in May 2011.

Although Virginia College's employment Compensation Plan permitted the college to terminate Ms. Blow's employment when she received a substandard evaluation while on a PIP, the college instead placed her on a second PIP and warned that, if her performance did not improve, she would be terminated.  Ms. Blow then received strikes for the consecutive weeks of May 8, May 15, and May 22, 2011.  The following month, Ms. Blow was terminated.

3

Ms. Blow filed this suit to challenge her termination.  She alleged that Ms. Beck and her other supervisors at Virginia College discriminated against her because of her race and retaliated against her for complaining about the way the admissions office was supervised.  According to Ms. Blow, several white Admissions Associates who received a number of strikes were not disciplined in the same way, which she alleged evinced the college's discrimination.[3]  After limited discovery, the district court granted summary judgment on all of Ms. Blow's claims in favor of Virginia College.  Ms. Blow now appeals.

## II.

We review the district court's summary adjudication *de novo*, drawing all inferences and reviewing all evidence in the light most favorable to the non-moving party.  *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial."

---

[3] Ms. Blow also alleged that Ms. Beck distributed leads in a discriminatory fashion and that she permitted only white employees to work overtime.  Her counsel clarified in the district court, however, that she challenged only her termination.  *See infra* section III.A.  Thus, we do not detail here allegations unrelated to Ms. Blow's termination.

4

*Moton*, 631 F.3d at 1341 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).[4]

### III.

### A.

We first address Ms. Blow's discrimination claim.  Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  Similarly, "[s]ection 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999); *see* 42 U.S.C. § 1981.  Discrimination claims brought under Title VII and § 1981 "are subject to the same standards of proof and employ the same analytical framework." *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).

This analytical framework, the *McDonnell Douglas* burden-shifting framework, places the burden of establishing a *prima facie* case of discrimination on the employee.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767-68 (11th Cir. 2005)

---

[4] We reject Ms. Blow's conclusory argument that the district court failed to apply the appropriate standard in deciding Virginia College's motion for summary judgment.  She failed to point to any portion of the district court's order where she believes the district court misapplied the standard, and upon our review of the record we see no indication that the district court did so.

(describing elements of "the familiar *McDonnell Douglas* framework"). An aggrieved employee may establish a *prima facie* case by showing that (1) she belongs to a protected class, (2) she was subjected to an adverse employment action, (3) her employer treated similarly situated employees outside her protected class more favorably, and (4) she was qualified to do the job. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). If the employee successfully makes this showing, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. If an employer comes forward with such a reason, the employee may nonetheless prevail if she shows that the employer's stated reason was a pretext for discriminatory animus. *See id.* at 804.

Virginia College does not dispute that Ms. Blow belongs to a protected class or that by her termination she was subjected to an adverse employment action. The college does, however, challenge the adequacy of the individuals Ms. Blow proffered as similarly situated. "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that [s]he and the employees are similarly situated in all relevant respects." *Holifield*, 115 F.3d at 1562. "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees

6

are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.*

We take the second of these questions first because, critically, the relevant discipline in this case is Ms. Blow's termination. Although on appeal she attempts to argue that her placement on a PIP and Ms. Beck's purportedly discriminatory supervisory practices are particularly relevant, her counsel confirmed to the district court that the only employment action she was challenging was her termination. Accordingly, the comparator employees are those who were "involved in or accused of the same or similar conduct" but were not terminated. *See id.*

Thus, the second question is whether any comparators were involved in or accused of the same or similar conduct as Ms. Blow. That is, whether any comparators were eligible for immediate termination because of their substandard annual evaluations while on a PIP and then received three consecutive strikes but were not terminated. Ms. Blow has proffered no such comparators. Indeed, as the district court found, Ms. Blow proffered no comparators who received three consecutive strikes while already on a PIP regardless of their eligibility for termination due to a substandard evaluation. Ms. Blow asserts that Stacy Hall, Charles Garrett, and James Young, all of whom are white, received three consecutive strikes but were not placed on a PIP. Ms. Hall, according to Ms. Blow, received three consecutive strikes on at least four occasions but was not

7

placed on a PIP.  As an initial matter, as the district court noted, Ms. Blow proffered no evidence that these employees were not placed on PIPs.  In any event, because Ms. Blow challenges only her termination, she cannot point to any alleged comparator's failure to be disciplined with a PIP as a comparable circumstance. *See Holifield*, 115 F.3d at 1562; *see also Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's misconduct be *nearly identical* to prevent courts from second-guessing employers' reasonable decisions and confusing applies with oranges." (emphasis added)).  Ms. Blow's contention that Ms. Hall and Mr. Garrett were afforded the opportunity to be reassigned while she was not is similarly immaterial.  Because Ms. Blow proffered no evidence that the reassigned employees were eligible for termination, she cannot establish that they were proper comparators under *Holifield*.  115 F.3d at 1562.

Ms. Blow's failure to identify comparators, and thus to make out a *prima facie* case, is fatal to her discrimination claim in this case.  Although we have held that a plaintiff may establish a *prima facie* case even in the absence of a similarly situated comparator, *see Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011), Ms. Blow failed to argue in the district court that other sufficient

circumstantial evidence suggested racial discrimination.[5]  And, in any event, the record does not contain sufficient circumstantial evidence to make a *prima facie* case of discrimination.  As a result, the district court was correct to grant summary judgment in favor of Virginia College.

## B.

The district court was also correct to grant summary judgment on Ms. Blow's retaliation claim.  Title VII makes it unlawful for an employer to retaliate against an employee for engaging in protected conduct.  *See* 42 U.S.C. § 2000e-3(a).[6]  An aggrieved employee must first establish a *prima facie* case of retaliation by showing that (1) she engaged in statutorily protected expression, (2) she suffered an adverse employment action, and (3) there is a causal connection between the two events.  *See Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 715 (11th Cir. 2002).  Virginia College challenges the first and third of these elements.

To show protected expression, Ms. Blow points to four instances in which she communicated with supervisors.  But in none of these instances did she even mention race, much less contend she was being treated differently because of her race.  In a July 16, 2010 email to Corporate Vice President of Admissions Dean

---

[5] Ms. Blow advanced this argument for the first time on appeal, but because this issue was not fairly presented to the district court, we will not address it.  *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1335 (11th Cir. 2004).

[6] Ms. Blow did not allege retaliation in violation of 42 U.S.C. § 1981.

Mahaffey, Ms. Blow expressed concern about her performance rating but made no mention of race. In an October 8, 2010 email to Region Vice President of Human Resources Mitch Srail, Ms. Blow complained about the company's overtime policies and expressed concern over Ms. Beck's supervision as it pertained to the policy, but again she made no mention of race. When asked whether the overtime policy was a "white and black" issue, Ms. Blow testified that to her it was a "green issue" because she wanted the money for working overtime. Doc. 24-2 at 14.

Ms. Blow emailed Mr. Srail again on March 23, 2011, a third communication that she proffered as protected activity. In that email, Ms. Blow expressed a "general concern . . . about being singled out/treated different" in her job and said she felt "as though the rules of the company are only directed to certain people." Doc. 24-4 at 31. But again Ms. Blow made no mention of race. We cannot require an employer to discern meaning from such vague references to different treatment. The final instance Ms. Blow points to, a May 12, 2011 email to Ms. Beck, similarly contains no statement or even suggestion that she attributed the problems she was experiencing at work to racial animus.

Because a close look at these emails makes clear that Ms. Blow did not tell her supervisors that she felt she was the victim of discrimination on the basis of her race, she cannot demonstrate that she engaged in statutorily protected expression. Ms. Blow's contention that her belief that she was the victim of racial

discrimination was reasonable and in good faith is of no moment because she produced no evidence that her employer knew of her beliefs. Without that evidence, Ms. Blow cannot demonstrate that she engaged in statutorily protected *expression*, and she cannot make out a *prima facie* case of retaliation.

Accordingly, the district court was correct to grant summary judgment in favor of Virginia College on this claim.

## III.

For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of Virginia College.

**AFFIRMED.**