[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13070

Non-Argument Calendar

_____

KEVIN LAMAR BLAKE,

Plaintiff-Appellant,

*versus*

ORANGE COUNTY SHERIFF'S OFFICE,
Police Department, individual capacity,
et al.,

Defendants,

ANDREW E. BRYANT,
Deputy Sheriff, individual capacity,
JORDAN M. DZIENDZIEL,
Detective, individual capacity,

2                    Opinion of the Court                    21-13070

BRIAN P. SAVELLI,
Detective, individual capacity,
JULIE DEJESUS,
Deputy First Class, individual capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:19-cv-00494-GKS-EJK

_____

Before JILL PRYOR, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Kevin Blake, proceeding pro se, appeals an order granting summary judgment to four officers of the Orange County Sheriff's Office. The district court awarded the officers qualified immunity from Blake's excessive force claims because it held that the force used in restraining and moving him after an interrogation was objectively reasonable. Blake's appeal, liberally construed, argues that qualified immunity was inappropriate because the defendants were not acting within their discretionary authority; that the force they used was not objectively reasonable and violated his Fourth Amendment rights; and that the law on that point was clearly

established at the time of his incident.  We disagree with Blake and affirm the district court.

## I.

We interpret pro se complaints liberally and construe factual inferences in favor of the non-movant at the summary judgment stage.  *See Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Blake brought this § 1983 suit against five Orange County police officers, but on appeal only three remain relevant: Detective Dziendziel, Detective Savelli, and Deputy Sheriff Bryant.[1]

Blake was detained as a suspect in the armed robbery of a pizza delivery driver.  After being transported to the station, he was placed in an interview room, where Dziendziel and Bryant tried to question him.  Bryant read Blake his *Miranda* rights at the beginning of the conversation before Dziendziel arrived, and Dziendziel read the *Miranda* rights again several minutes later when he entered.

The conversation over the next half hour was less than pleasant.  As Blake admits, he "may have slightly been intoxicated"[2] and he "urinated in the corner of the room, used excessive

---

[1] Deputy Sheriff Braden was dismissed from the action before summary judgment.  In the summary judgment order, the district judge explained how Blake conceded that another officer—Deputy DeJesus—did not use any force against him.  Blake does not contest that fact on appeal.

[2] He said on video "I don't remember shit from no days, man, I get fucked up every day, hang out, chill, and drink, that's what I do, I drink."  When asked to define "fucked up," he said, "I mean drunk."

profanity, acted rude and belligerent, and at one point during the end of the interview refused to sit down." Explaining that decision, Blake says that he "stood from his chair taking a few steps toward the door hoping this would cause the Detective [Dziendziel] to end the interview. Instead of his decision forcing the interview to end it caused the situation to escalate out of control."

Throughout his time in the interview room, two cameras filmed Blake, producing video evidence (with sound) that he calls "indisputable." It clearly shows what happened. Though handcuffed throughout the interview, Blake began leaning into officers' faces while yelling, and swinging his elbows. After he stood up, Bryant and Dziendziel pushed Blake into a corner, leading Blake to say that "you gonna have to use your gun tonight." Bryant and Dziendziel then took Blake to the ground, causing other officers—including Savelli—to enter the room. Savelli dragged Blake out of the room by his feet as Blake tried to wrestle free, causing him to flip onto his back.

There is no video once Blake exits the interview room, but he can be heard laughing and yelling that he was "walking on his elbows." He recounts being "dragged from the interview room to the elevator." Blake explains that as he "reached the elevator he was still yelling and being verbally abusive. During his verbal escapade saliva may have flown from his mouth unintentionally striking one of the detectives." Beyond the initial takedown, Blake complains of rug burns from being dragged; that Savelli used his foot to pin Blake's head to the ground after the spitting incident in

the elevator; that he was dropped rather than lowered to the ground outside the building while the officers waited for a car to transport Blake to jail; and that Dziendziel "placed a foot to Appellant's chest shoving him back into a laying down position" at that time. Blake does not contest that the officers ceased using force once his legs had been secured with hobbles. According to his § 1983 complaint, these actions constitute unconstitutionally excessive force in violation of Blake's Fourth Amendment right to be free from unlawful seizures.

After the incident, Blake reported abrasions on both elbows, both knees, and his face—the last of which needed a bandage. He was charged with battery on a law enforcement officer. A lieutenant with the Professional Standards Section of the Orange County Sheriff's Office produced an administrative review which, in Blake's words, "corroborates exactly what the Appellant stated in his Amended Complaint." The report concluded that the officers had acted reasonably and violated no internal office orders or Florida statutes. The district court granted the officers' summary judgment motion, determining that the force used against Blake was objectively reasonable, and thus the officers were entitled to qualified immunity.

## II.

We review a district court's order granting summary judgment de novo, drawing all inferences and reviewing the evidence in the light most favorable to the non-moving party. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).

### III.

Once a government official shows that he acted within the scope of his discretionary authority, the plaintiff must try to overcome the qualified immunity defense by showing that: (1) the defendant violated a constitutional right, and (2) the violation of the right was clearly established. *Wood v. Moss*, 572 U.S. 744, 757 (2014).

"Because interrogating suspects and witnesses is one of a law enforcement officer's basic duties," the district court concluded that the officers were acting within their discretionary authority. We agree. The test is whether an officer was "performing a legitimate job-related function" through "means that were within his power." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

Blake's argument is that after he invoked his right to remain silent, any further questions the officers asked him were outside their discretionary authority because they violated his Fifth Amendment right to remain silent. But while one "might reasonably believe that violating someone's constitutional rights is never a legitimate job-related function or within the scope of a government official's authority," a test framed that way would be "no more than an untenable tautology." *Id.* at 1266 (quotation omitted). Instead, we "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose." *Id.* And even Blake concedes that in general, the officers were acting within

21-13070                 Opinion of the Court                          7

their discretionary authority by interviewing him.[3] *See also Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (transporting a suspect to jail is "clear" discretionary authority for police officers).

Because Blake does not cite any authority for his arguments that the officers stepped outside their discretionary authority, we assess whether he has met his burden on both prongs of qualified immunity. He has not.

"Not every push or shove" violates the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quotation omitted). Police officers may use some degree of physical coercion or threat thereof to subdue an arrestee. *Id.* at 396; *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). Whether force was excessive or appropriate is judged under an objectively reasonable standard from the perspective of a reasonable officer on the scene without the benefit of hindsight. *Graham*, 490 U.S. at 396–97. Factors we must consider include "the severity of the crime at issue," "whether the suspect poses an immediate threat to the safety of the officers or others," whether he was "actively resisting arrest or attempting to evade arrest by flight," "the need for the application of force," the "extent of the injury inflicted," and the "relationship between the need and amount of force used." *Mobley v. Palm Beach Cnty.*

---

[3] Outside of excessive force in violation of his Fourth Amendment rights, Blake's other constitutional claims were dismissed before summary judgment. He does not challenge that decision in his appellate briefing.

*Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015) (quotations omitted).

These factors all support the use of force displayed by the officers here.  Blake was being questioned concerning an armed robbery on a night when he had been drinking.  Though he denied being "drunk" during the police interview, he admitted he "may have slightly been intoxicated" and to drinking "every day."  In his own words, Blake explained how he stood up to try to end the interview—and video and audio show him resisting the officers' attempts to subdue him after that.  Both his words and body language threatened the officers.  And the abrasions that Blake reported all flowed from the officers' efforts to get and keep him on the ground, where he could be more easily secured.  *Cf. Smith v. Mattox*, 127 F.3d 1416, 1417–18, 1420 (11th Cir. 1997) (denying an officer qualified immunity at summary judgment when he used excessive force by breaking an arrestee's arm while he "docilely submitted" to handcuffing on the ground).

Blake cannot point to any clearly established law to the contrary.  We have held that an officer who punched a "handcuffed, non-resisting" suspect "for no apparent reason other than malice" used unreasonably excessive force.  *Hadley v. Gutierrez*, 526 F.3d 1324, 1333–34 (11th Cir. 2008); *see also Lee v. Ferraro*, 284 F.3d 1188, 1190–91, 1199 (11th Cir. 2002) (similar).  But while Blake was handcuffed, he can hardly be described as non-resisting—nor were the officers' efforts to secure and remove him from the room equivalent to a punch.  As we explained in *Lee*,

slamming a handcuffed arrestee against a car was excessive force when she was "completely secured, and after any danger to the arresting officer as well as any risk of flight had passed." *Lee*, 284 F.3d at 1199. Blake was only in this position once the officers had secured his legs with a hobble on the curb—which is also when they stopped using force. The more comparable case is *Draper v. Reynolds*. Draper—after initially behaving "politely"—became "hostile, belligerent, and uncooperative," refusing to comply with an officer's request while he "gestured animatedly" and "continuously paced" about, necessitating a taser shot before handcuffing. *Draper v. Reynolds*, 369 F.3d 1270, 1272–73, 1278 (11th Cir. 2004).

Recognizing the lack of on-point caselaw, Blake argues that the conduct was so obviously at the core of what the Constitution prohibits that its unlawfulness was readily apparent to all. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1160 (11th Cir. 2005). As he points out, that rule is "narrow." The plaintiff must show that *every* reasonable officer would conclude that the excessive force used was plainly unlawful—a tall order here, especially given the post-incident administrative review. *See Priester v. City of Riviera Beach, Florida*, 208 F.3d 919, 926 (11th Cir. 2000). Here, the force was not "so far beyond the hazy border between excessive and acceptable force that the official had to know he was violating the Constitution even without caselaw on point." *Id.* at 926 (quotation omitted and alteration adopted). We therefore **AFFIRM.**