[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14364
Non-Argument Calendar
_____

D.C. Docket No. 3:15-cv-00827-BJD-PDB


JERALD GIPSON,

Plaintiff-Appellant,

versus

K RENNINGER,
Correctional Officer, et al.,

Defendants,

KEVIN RENNINGER,
Correctional Officer, In his individual capacity,
JOHN GREEN,
Lieutenant, In his individual capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 1, 2018)

Before WILSON, FAY and HULL, Circuit Judges.

PER CURIAM:

Jerald Gipson, a Florida state prisoner proceeding pro se, appeals the district court's grant of summary judgment in favor of Florida Department of Corrections ("FDOC") officers Kevin Renninger and John Green on his claims of deliberate indifference to his serious medical needs, unconstitutional conditions of confinement, and retaliation. We affirm.

## I. BACKGROUND

According to his verified third amended complaint, on May 29, 2015, while Gipson was housed in a mental health inpatient transitional care unit at Suwanee Correctional Institution ("SCI"), Renninger and Green ignored his medical emergency and subjected him to unconstitutional conditions of confinement and retaliation. Gipson specifically alleged that, on May 29, around 12:45 p.m., Renninger was doing a security check and came by Gipson's cell. Gipson informed Renninger that he was experiencing a medical emergency consisting of severe chest pains, "blanking out," and heart pains; he asked Renninger to call the nurse. He informed Renninger that he had had a previous head injury, a heart murmur, and a hole in his heart. Renninger told him to "get off his door" and threatened to harm him and withhold medical treatment. When the nurse on duty made her rounds, she and Renninger responded to Gipson's complaint that he was

2

suffering a medical emergency, saying, "[I]f you're not bleeding or cutting yourself; it's not a medical emergency."  Gipson was placed on "property restriction" for up to 72 hours, meaning he was told to strip down to his boxers and relinquish any state property in his possession, including his mattress, sheets, and blanket.

Gipson alleged that, 30 minutes later, both Renninger and Green entered his quad and stated that if Gipson claimed to have another medical emergency, he would not eat for a week, and if he filed a grievance or lawsuit, they would break his jaw again and send him to the hospital to have his jaw wired up.  He was afraid to lie down and feared he may have a heart attack due to the physical and emotional stress caused by his treatment in prison and from being denied emergency medical treatment.  Around 3 p.m., Green saw him in his cell and made sexual comments.  As a result of sleeping on a hard, concrete bunk at a temperature below 50 degrees in just his boxers, and still not receiving a medical examination for his head injuries, he claimed that he continued to experience periods of unconsciousness, swelling, and pain.  Renninger told Gipson that the fact that he was placed on property restriction would go in his file, even though Gipson did not violate any FDOC rules.

On July 2, 2015, Gipson filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 against Renninger and Green.  After discovery, Renninger and

3

Green moved for summary judgment and argued, inter alia, that Gipson failed to exhaust his administrative remedies because he filed this lawsuit without first filing a grievance and appeal with the FDOC, as required by Florida law.[1]  Renninger and Green attached Gipson's grievance log, showing that Gipson filed an "emergency grievance" with the Secretary of the FDOC on June 11, 2015, containing allegations regarding May 29, 2015.  At the top of the grievance, Gipson stated: "I believe that there will be some adverse actions (retaliations) if the officers are placed on notice at the institutional level."

On June 15, 2015, the Secretary returned the emergency grievance without action as it failed to comply with an FDOC rule requiring that inmates first file a grievance with the institution, stating that the institution should be given an opportunity to respond to the issue.  The Secretary also stated that Gipson's grievance was not accepted as a grievance of an emergency nature because Gipson had not provided information or evidence to substantiate his fear of reprisal.  The log also revealed that Gipson had filed at least six grievances since his June 11,

---

[1] Renninger and Green also argued that: (1) Gipson failed to state a retaliation claim because he initially alleged only that he feared retaliation, his allegations regarding being threatened appeared only in his Third Amended Complaint filed on August 18, 2016, not in his June 11, 2015, "emergency grievance," and verbal threats alone are insufficient to state a claim for retaliation; (2) Gipson could not show deliberate indifference to a serious medical need because Renninger and Green did not know that Gipson was in serious need of medical treatment; (3) Gipson could not show a conditions-of-confinement claim, as Gipson failed to show conditions objectively serious or extreme enough to pose an unreasonable risk of serious harm to his health; and (4) to the extent that Gipson was suing them in their official capacity, the State of Florida and its agencies were immune from suit in federal court under the Eleventh Amendment.

2015, emergency grievance.  Five of his grievances were returned unfiled; one grievance filed on December 28, 2015, was denied.

The district court granted Renninger and Green's motion for summary judgment.  The court determined that Gipson had failed to exhaust his administrative remedies because he never submitted a grievance at the institutional level.  The court found that his "emergency grievance" to the Secretary of the FDOC was properly returned unfiled under the Florida Administrative Code, Fla. Admin. Code Ann. rr. 33-103.002(4), 33-103.007(6)(a)(1)-(2), and 33-103.014(1)(f), because Gipson simply stated be believed there would be adverse actions by unnamed officers, without providing any information or evidence to support his claim of fear of reprisal.  The district court additionally found that the administrative process was available to Gipson, since his "emergency grievance" had clearly been reviewed.  Thus, the court concluded that, because Gipson was able to do so but never gave the institution an opportunity to respond to his grievance, he failed to comply with the procedural requirements of the administrative grievance process and failed to exhaust his administrative remedies.

The district court also concluded that: (1) Gipson was suing Renninger and Green in their individual capacities, so they were not entitled to immunity under the Eleventh Amendment; (2) Gipson failed to raise a claim of retaliation under the First Amendment; (3) Gipson failed to demonstrate a conditions-of-confinement

5

claim because his being deprived of his property for 72 hours due to a disciplinary violation did not amount to an inhumane condition of confinement or extreme deprivation; (4) Gipson failed to show a claim of deliberate indifference to a serious medical need; (5) Gipson did not show that Renninger's and Green's responses to his medical need were objectively insufficient; and (6) Renninger and Green were entitled to qualified immunity.

On appeal, Gipson argues that he exhausted his administrative remedies by filing a direct grievance with the Secretary of the FDOC and that he showed that the corrections officers at the SCI were deliberately indifferent to his objectively serious medical need.

## II. DISCUSSION

We review de novo a district court's grant of summary judgment. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S. Ct. 1575, 1592 (1968)). A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is "merely colorable" or "not significantly probative" is not enough. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 252, 106 S. Ct. 2505, 2511, 2512 (1986).

Pro se filings are held to a less stringent standard than pleadings drafted by attorneys and are therefore liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). We review the district court's factual findings on exhaustion for clear error. *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015). Failure to exhaust administrative remedies requires that the action be dismissed. *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004).

The Prison Litigation Reform Act of 1996 ("PLRA") provides that no action may be brought with respect to prison conditions under 42 U.S.C. § 1983 by a prisoner until his available administrative remedies are exhausted. 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life" and "entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'" *Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005) (first quoting *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 992 (2002); then quoting *Booth v. Churner*, 532 U.S. 731, 741 n.6, 121 S. Ct. 1819, 1825 n.6 (2001)). The purpose of the PLRA's requirement that a prisoner exhaust his administrative remedies before bringing a § 1983 suit relating to prison conditions is to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1214-15 (11th Cir. 2015).

To determine "proper exhaustion" in prisoner civil rights actions, courts must look to the requirements of the "prison grievance system." *Woodford v. Ngo*, 548 U.S. 81, 95, 126 S. Ct. 2378, 2388 (2006). A prisoner must comply with rules "defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910, 922 (2007). A prisoner is not required to exhaust remedies if they are not "available." *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016). An administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates or when prison administrators prevent inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. *Id.* at 1859-60. Threats of substantial retaliation against an inmate for lodging or pursuing a grievance in good faith render the administrative remedy unavailable and thus lift the exhaustion requirement as to the affected parts of the process. *Turner v. Burnside*, 541 F.3d 1077, 1084-85 (11th Cir. 2008). To show that the administrative remedy is unavailable, two conditions must be met: (1) the threat must actually deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat must be one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust. *Id.* at 1085.

In Florida, the grievance process consists of a three-step procedure. First, an inmate must submit an informal grievance to the designated staff member by placing the grievance in a locked grievance box. Fla. Admin. Code Ann. r. 33-103.005(1)(a). The second step requires the inmate to file a formal grievance with the warden. *Id.* r. 33-103.006(1)(a). The last step in the FDOC's grievance procedure requires the inmate to submit an appeal to the Secretary of the FDOC. *Id.* r. 33-103.007. Upon receipt of the appeal, the Secretary must then either approve, deny, or return the grievance for procedural error, and state the reasons for the decision. *Id.* r. 33-103.007(4)(e)-(f). The grievance process also provides two exceptions that allow a prisoner to send a direct grievance to the Secretary, bypassing the informal and formal grievance steps. The first is if the grievance is an emergency. *Id.* r. 33-103.007(6)(a). An emergency grievance concerns matters which "would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm." *Id.* r. 33-103.002(4). The second involves a "grievance of reprisal." *Id.* r. 33-103.007(6)(a). A grievance of reprisal is a "grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure." *Id.* r. 33-103.002(9). Either type of direct grievance may be returned if the inmate "did not provide a valid reason for by-passing the

9

previous levels of review as required or the reason provided is not acceptable." *Id.* r. 33-103.014(1)(f).

Here, the district court correctly concluded that Gipson had failed to exhaust his administrative remedies through the grievance he filed directly with the Secretary of the FDOC. The court properly concluded that Gipson's "emergency grievance" failed to show he was subject to substantial risk of personal injury, as required by the Florida Administrative Code, Fla. Admin. Code Ann. r. 33-103.002(4).  At the time of the grievance, Gipson complained of "lower back and neck pain and head cold as an [sic] result of being forced to live [for 48 hours without bedding, his uniform, or comfort items]."  He did not clearly indicate that these conditions were ongoing.  Thus, even if the disciplinary action posed a substantial risk of personal injury while it was ongoing, the emergency had concluded by the time he filed the "emergency grievance."  Gipson did not show any reason that he was currently at substantial risk of personal injury or other serious, irreparable harm at the time of the grievance.  *Id.* rr. 33-103.002(4), 33-103.014. Thus, the district court correctly concluded that the grievance was properly returned unfiled because it was not an emergency grievance.

Even construing the direct grievance as a "grievance of reprisal," as both the Secretary of the FDOC and the district court appeared to do, the district court was correct in concluding that the grievance was properly returned unfiled.  Unlike the

10

prisoner in *Dimanche*, who stated that he had been "gassed," issued disciplinary reports for filing grievances in the past, and threatened with being gassed to death if he wrote another grievance, Gipson merely stated, "I believe there will be some adverse actions (retaliations) if the officers are placed on notice at the institutional level." *See Dimanche*, 783 F.3d at 1210-14.  Thus, as Gipson's grievance lacked factual support for his allegations of threats of retaliatory action by prison staff, the district court properly concluded that it failed to meet the requirements of the "prison grievance system." *See* Fla. Admin. Code. Ann. rr. 33-103.002(9), 33-103.014; *Woodford*, 548 U.S. at 93-95, 126 S. Ct. at 2387-88.

Instead of refiling his grievance following the informal and formal procedures provided for in the Florida Administrative Code, after his grievance was returned unfiled on June 15, 2015, Gipson then proceeded directly to filing suit on July 2, 2015.  *See* Fla. Admin. Code Ann. rr. 33-103.005(1)(a), 33-103.006(1)(a).  The district court properly concluded that Gipson did not submit evidence showing that he filed any other proper administrative grievances relating to the incident on May 29, 2015.  Thus, assuming these administrative remedies were available to Gipson, the district court correctly concluded that he failed to exhaust them.

The district court also correctly concluded that the grievance process was available to Gipson, inasmuch as there is no evidence of anything preventing him

11

from correcting the defects in his "grievance of reprisal" to the Secretary of the FDOC. Gipson arguably did show that the informal and formal grievance processes were not available to him due to threats of substantial retaliation, as he provided sworn testimony that Renninger threatened to break his jaw and that Green had retaliated against other inmates in the past for filing grievances. *Turner*, 541 F.3d at 1084-85.  By citing this evidence as his reason for filing only the emergency grievance, Gipson showed that he was actually deterred from filing the required informal and formal grievances for fear of reprisal, satisfying *Turner*'s first prong.  *Turner*, 541 F.3d at 1085.  While Green and Renninger undermine this conclusion by showing that Gipson subsequently filed at least six new grievances, the five most recent grievances were possibly direct grievances, as they were returned unfiled.  *Moton*, 631 F.3d at 1341 (stating that this Court construes all factual inferences arising from the evidence in the light most favorable to the nonmovant).

In addition, like the prisoner in *Turner,* who showed that a reasonable prisoner would be deterred from filing grievances due to fear of reprisal where the warden ignored his formal grievance and threatened to transfer him to another prison, Gipson here showed conditions that would deter a prisoner of ordinary firmness from submitting a grievance with SCI. Specifically, he provided unrebutted testimony that Green controls the grievance review process, that both

12

officers threatened to break Gipson's jaw, and that other inmates had been retaliated against at SCI for filing grievances. *See Turner*, 541 F.3d at 1084-85. Thus, Gipson provided evidence which, when construed in the light most favorable to him, showed that the internal grievance process was unavailable to him. *See Moton*, 631 F.3d at 1341.

Nonetheless, Gipson failed to show that such threats would have deterred him from again bypassing SCI's grievance procedure and filing a proper "grievance of reprisal" with the Secretary of the FDOC pursuant to the Florida Administrative Code, Fla. Admin. Code Ann. r. 33-103.007(6)(a). Indeed, the record shows he filed six grievances after his June 11, 2015, grievance was returned. Accordingly, the emergency grievance process was available to Gipson, but he did not avail himself of the process by correcting the defects in his emergency grievance, allowing the FDOC an opportunity to address his complaints. *Woodford*, 548 U.S. at 93-95, 126 S. Ct. at 2387-88; *Whatley*, 802 F.3d at 1214-15. Therefore, the district court did not err in concluding that Gipson failed to exhaust his administrative remedies when he filed a single, defective emergency grievance with the Secretary of the FDOC.

Because the district court properly granted summary judgment on this ground, we decline to address the alternative grounds for summary judgment.

**AFFIRMED.**

13