A94A0488. BCS FINANCIAL CORPORATION v. SORBO et al.
(444 SE2d 85)

BLACKBURN, Judge.

The appellant, BCS Financial Corporation, filed the instant petition for foreclosure of a 1988 Redman Lakeside mobile home purchased by appellee Kenneth Sorbo and his wife on July 7, 1988, pursuant to the terms of a mobile home retail installment sales contract and deed to secure the indebtedness executed in favor of Country Squire Mobile Homes, Inc., BCS Financial's predecessor in interest. The Sorbos discontinued payment under the terms of the contract based upon the seller's failure to repair numerous defects that existed in the home at the time that the home was delivered. Sorbo[1] responded to the petition, asserting several defenses, including breach of express and implied warranties, and breach of the contract based upon the defects in the home, and filed a counterclaim for damages arising from the alleged breach of the contract and warranties.

BCS Financial subsequently moved to add Redman Homes, the manufacturer of the home, as a party defendant,[2] and the trial court granted the motion, finding that the presence of Redman Homes, Inc.

---

[1] Although both Kenneth and Della Marie Sorbo were named in the contract as buyers, only Kenneth Sorbo is involved in this action.

[2] The seller of the home, Country Squire Mobile Home, Inc., has allegedly filed for bankruptcy protection and is not involved in this action.

was required for the granting of complete relief. The case proceeded to trial, and BCS Financial's motions for directed verdict were denied by the trial court.[3] The jury subsequently returned a verdict in favor of Sorbo on his counterclaim for $10,000, and also awarded Sorbo title to the mobile home. The jury further found in favor of Redman Homes, Inc. on BCS Financial's third-party complaint, and a judgment was entered on the jury's verdict. The trial court denied BCS Financial's motion for new trial or in the alternative, motion for j.n.o.v., but reduced the amount of damages awarded to Sorbo to $5,016.65 based upon the court's conclusion that the amount previously awarded was excessive. This appeal followed.

1. Initially, BCS Financial asserts that the trial court erred in failing to direct a verdict in its favor on the ground that Sorbo failed to show any damages as a result of the breach of any warranties. We disagree.

" 'The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. In a proper case, any incidental and consequential damages under Code section 11-2-715 may also be recovered.' OCGA § 11-2-714 (2 and 3)." *Fiat Auto U.S.A. v. Hollums*, 185 Ga. App. 113, 115 (363 SE2d 312) (1987). At trial, Sorbo presented evidence of the purchase price of the mobile home ($19,320), the base price of the home ($11,674), and the total invoice price of the home ($12,649), and this "was some evidence of the value the [mobile home] would have had if it had been as warranted. . . ." Id. at 116.

Sorbo also presented the testimony of the owner of the mobile home park where the Sorbos resided who had purchased and sold mobile homes for 15 years. This witness testified that she was generally familiar with the values of mobile homes and in fact, she and her husband were in the mobile home repair business. She testified that it would cost between $5,000 and $7,000 to repair the mobile home in the condition that it was in at the time of trial, which would include replacing the roof, doors, and windows because of water damage, and the fact that the home was not properly leveled. She saw the home at the time that it was delivered to the lot, and at that time, the home was not level and the roof was buckling. She opined that the mobile home's value was between $4,000 to $6,000, and the rental value of the home was between $60 and $70 per week. Contrary to BCS Financial's assertions, this evidence provided the jury with a basis from

---

[3] Redman Homes also moved for a directed verdict, and after reserving its ruling on the motion until the close of the evidence, the trial court denied the motion.

which to compute the amount of damages suffered by Sorbo without speculating.

2. Next, BCS Financial asserts that the implied warranty of fitness was improperly charged as there was no evidence that Sorbo relied on the skill and judgment of the seller. However, this enumeration is not supported in its brief by citation of authority or argument, and is deemed abandoned pursuant to Court of Appeals Rule 15 (c) (2). *Jabaley v. Jabaley*, 208 Ga. App. 179 (430 SE2d 119) (1993). BCS Financial further fails to support its seventh enumeration of error with citation of authority or argument, and it is likewise deemed abandoned.

3. BCS Financial also contends that a directed verdict, j.n.o.v., or new trial was warranted on the grounds that any warranties by the seller were disclaimed in the installment contract, and accordingly, recovery against the corporation is precluded. However, this disclaimer cannot constitute an exclusion of the implied warranty of the seller that the mobile home was fit for the ordinary purposes for which mobile homes are used, that is, as family residences. See OCGA § 11-2-314. The disclaimer was not conspicuous, and "[e]xclusions of implied warranties of fitness or merchantability to be effective are required to be by writing and conspicuous. [Cit.]" *White v. First Fed. &c. Assn. of Atlanta*, 158 Ga. App. 373 (1) (280 SE2d 398) (1981). Moreover, the disclaimer specifically provided that no express or implied warranties are made unless covered by a separate agreement and an express warranty was provided by the manufacturer.

4. BCS Financial additionally argues that the trial court erred in allowing a recovery to Sorbo that exceeded the amount paid to BCS Financial. However, the evidence produced at trial shows that the Sorbos made a cash down payment of $1,053, and made at least 27 payments of $294.95 pursuant to the terms of the contract. The amount paid by the Sorbos pursuant to the terms of the installment contract exceeded the judgment entered in favor of Sorbo. While BCS asserts that the trial court should not, in effect, have allowed Sorbo to set off his warranty claim in this foreclosure action, this issue was not raised in a separate enumeration of error. "It is axiomatic, however, that enumerations of error cannot be expanded by argument to include matters not originally enumerated by the appellant as error. [Cits.]" *Robertson v. U-Haul Co. of Western Ga.*, 208 Ga. App. 222, 223 (1) (430 SE2d 113) (1993). Thus, we are without authority to consider this assertion.

5. BCS Financial also maintains that the trial court erred in failing to direct a verdict because satisfactory performance was not a condition of payment, and Sorbo was in default under the terms of the installment contract. However, under OCGA § 44-14-233, in answering a petition in a forfeiture action, a defendant may assert any

legal or equitable defenses or a counterclaim, and by implication, such defenses will be considered in the determination of whether a foreclosure petition should be granted.

6. In his sixth enumeration, BCS Financial contends that the jury's verdict shocked the conscience and was excessive. "However, where, as here, the judgment of the trial court awards damages within the range of the [trial] testimony, this court will not reverse the judgment of the trial court on the ground the judgment was excessive." (Citations and punctuation omitted.) *Choi v. Wan*, 207 Ga. App. 73, 74 (5) (427 SE2d 64) (1993).

7. Lastly, we reject BCS Financial's assertion that a directed verdict or j.n.o.v. was warranted because the verdict, in essence, makes the corporation a guarantor on the contract, allegedly in contravention of the law. It is the specific language contained in the retail installment contract which makes the corporation a guarantor. The contract provides in conspicuous bold letters **"NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH PROCEEDS HEREOF."** BCS Financial voluntarily accepted the terms of this contract upon assignment of the contract to the corporation, and cannot now be heard to complain of obligations the corporation voluntarily and knowingly assumed.

*Judgment affirmed. Birdsong, P. J., and Cooper, J., concur.*

DECIDED MARCH 16, 1994 —
RECONSIDERATION DENIED MAY 23, 1994 — 

*Allen W. Johnson*, for appellant.

*Dye, Tucker, Everitt, Wheale & Long, John B. Long, Knox & Zacks, Ronald C. Melcher, Kilpatrick & Cody, Ted H. Clarkson*, for appellees.