## A97A2137. PRESTO et al. v. CHARTER PEACHFORD BEHAVIORAL HEALTH SYSTEM, INC.
### (494 SE2d 377)

BLACKBURN, Judge.

This is the second appearance of this case before us. In *Presto v. Sandoz Pharmaceuticals Corp.*, 226 Ga. App. 547 (487 SE2d 70) (1997), we upheld the trial court's dismissal of the plaintiffs' claims against Sandoz Pharmaceuticals Corporation, and we affirmed the trial court's grant of summary judgment in favor of Caremark, Inc. on Charles and Mary Presto's tort and warranty claims. With regard to the present case, Charles and Mary Presto sued Charter Peachford Behavioral Health System, Inc. for negligently failing to warn them about dangerous qualities of Clozaril and for medical malpractice, and they now appeal the trial court's grant of Charter Peachford's motion for summary judgment.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a [genuine] jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." (Citation and emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Having diagnosed Greg Presto, the adult son of plaintiffs Charles and Mary Presto, as a schizophrenic, Dr. H. Rudolph Warren prescribed Clozaril, a product of Sandoz Pharmaceuticals Corporation, for him. Dr. Warren was not an employee of Charter Peachford while Greg was under his care, although he rented office space from the hospital and received certain corollary privileges. Due to the potential effects Clozaril can have on a patient's immune system, Caremark was hired to perform certain tests on Greg, monitor the results of those tests, and dispense the medication to him. As part of this treatment, Charter Peachford performed the limited function of drawing the patient's blood in order to provide it to Caremark for testing.

Clozaril alleviated the symptoms of Greg's schizophrenia, but, due to certain side effects, Greg and his mother requested that Dr. Warren end Clozaril therapy in August 1993. Dr. Warren allegedly

agreed and prescribed another drug as a replacement. According to the Prestos' complaint, neither Greg nor his parents were informed by anyone that a warning was included in the Clozaril packaging which indicated that Clozaril therapy should be terminated gradually and that, in the case of an abrupt discontinuation, "the patient should be carefully observed for the recurrence of psychotic symptoms."

Greg committed suicide on September 6, 1993. The Prestos attribute their son's suicide to the sudden discontinuation of his Clozaril therapy. They allege that Charter Peachford bears responsibility for Greg's suicide because it should have warned Greg and his family of the dangers he faced if he abruptly discontinued use of Clozaril and because it was negligent in administering and dispensing the drug. The Prestos claimed below that Charter Peachford negligently hired Dr. Warren and that it was subject to vicarious liability for Dr. Warren's actions. These claims, however, were not raised before this Court and have been abandoned; therefore, we do not consider them here.

There is no evidence that Charter Peachford had any involvement in the ongoing treatment of Greg at the time of his suicide which would support the Prestos' claims of negligence. At that time, Charter Peachford's only connection with Greg's treatment was that it rented space to Dr. Warren and that Greg had blood drawn in the laboratory on its premises for use by Caremark, Inc. In addition, Dr. Warren stated in his affidavit that Charter Peachford did not participate in the decisions regarding Greg's Clozaril therapy. Furthermore, the Prestos deposed that they were relying on Dr. Warren, not Charter Peachford, to determine the nature and scope of Greg's care. Therefore, plaintiffs' arguments that Charter Peachford's actions were a proximate cause of Greg's suicide must fail. See *Clough v. Lively*, 193 Ga. App. 286 (387 SE2d 573) (1989) (in the absence of a patient-health care provider relationship there is no medical malpractice).

The Prestos' claims that Charter Peachford had a duty to warn based on warranty law are also meritless. The Prestos base these claims on the Uniform Commercial Code's warranties of merchantability which are applicable to manufacturers and vendors. See OCGA § 11-2-314. As the evidence shows that Charter Peachford neither manufactured nor prescribed Clozaril, once again, the plaintiffs' claims must fail.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED DECEMBER 1, 1997 — 

*Chamberlain, Hrdlicka, White, Williams & Martin, Richard N.*

*Hubert*, for appellants.

*Alston & Bird, Lawrie E. Demorest, Candice Stone, Love & Willingham, Robert P. Monyak*, for appellee.