## A98A1425. WILLIS MINING, INC. v. NOGGLE.
### (509 SE2d 731)

SMITH, Judge.

James R. Noggle d/b/a Reliance Granite Company ("Noggle") filed this action against Willis Mining, Inc. ("Willis") and Richard Lee Willis after a dispute arose over the sale of granite blocks. Noggle alleged claims under the Uniform Commercial Code, including breach of an implied warranty of merchantability, as well as claims for intentional interference with business relationships and slander. The defendants answered, and Willis counterclaimed for amounts it asserted Noggle owed on account. A jury awarded $300,000 to Noggle on the warranty claim against Willis.[1] Willis appeals from the trial

---

[1] The jury found in favor of Willis and Richard Lee Willis on Noggle's remaining claims,

court's denial of its motion for directed verdict and motion for a new trial on this issue. Because the evidence was sufficient to support the verdict, we affirm.

The record shows that Willis quarries granite, cuts it into blocks, and sells it. Noggle bought granite blocks from Willis, fashioned them into gravestone monuments, and sold them to monument dealers, who in turn made retail sales to the public. Within approximately 18 months of sale, monuments made from this stone and sold by Noggle became discolored. When Willis refused to reimburse Noggle for the losses he claimed in replacing the monuments, Noggle brought suit.

1. Willis enumerates two errors: the denial of its motion for directed verdict and denial of its motion for a new trial. But Willis attempts to assert multiple errors within these two enumerations in violation of OCGA § 5-6-40. Moreover, the content of each enumeration of error is largely duplicative of the other. "When, as here, an appellant asserts more than one error within a single enumeration, this court in its discretion may elect to review none, or one or more, of the errors asserted within the single enumeration." (Citations and punctuation omitted.) *Toledo v. State*, 216 Ga. App. 480, 482 (4) (455 SE2d 595) (1995). This court may elect "to treat the remaining assertions of error therein as abandoned." (Citation and footnote omitted.) *Holt v. Leiter*, 232 Ga. App. 376, 380 (1) (501 SE2d 879) (1998). We choose to address only Willis's arguments concerning the Uniform Commercial Code and the general grounds.

2. Willis claims that its agreement with Noggle contained no implied warranty. This contention appears to be supported by two arguments, both erroneous.

(a) Willis first argues that no warranty exists because the buyer inspected the blocks and used his own judgment in selecting his purchases. While such an argument appears relevant to an implied warranty of fitness for a particular purpose, OCGA § 11-2-315,[2] it is inapplicable to a warranty of merchantability. OCGA § 11-2-314 (1) provides that a contract for the sale of goods implies a warranty of merchantability of the goods. Generally, under OCGA § 11-2-316 (2), "exclusions of implied warranties of fitness or merchantability to be effective are required to be by writing and conspicuous." (Citations and punctuation omitted.) *BCS Fin. Corp. v. Sorbo*, 213 Ga. App. 259, 261 (3) (444 SE2d 85) (1994). Since the implied warranty of merchantability was not clearly disclaimed, it applies to the sale of goods in this case absent one of the exceptions enumerated in OCGA

---

and the trial court directed a verdict in favor of Willis on its counterclaim.

[2] The jury returned a verdict that specifically stated it found no warranty of fitness for a particular purpose, and as a result OCGA § 11-2-315 is not an issue in this appeal.

§ 11-2-316 (3). One such exception, set forth in OCGA § 11-2-316 (3) (c), provides that an implied warranty may be modified by usage of trade. Willis contends that trade usage and its course of dealing and performance establish that an implied warranty of merchantability "was not relied upon," citing *Topeka Mach. Exch. v. Stoler Indus.*, 220 Ga. App. 799 (470 SE2d 250) (1996).

But *Topeka* holds only that evidence regarding trade usage is admissible. Id. at 799 (1). As Willis tacitly acknowledges by its citations to testimony regarding trade usage, the trial court did not improperly exclude Willis's evidence of trade usage. The trial court specifically instructed the jury that "[a]n implied warranty can be excluded or modified by course of dealings or course of performance or usage of trade." The existence of trade usage, course of dealing and course of performance sufficient to create an exception to the rule requiring conspicuous written exclusion of warranties are questions of fact, and as such they are for the jury to determine. See generally *Ga. Timberlands v. Southern Airways Co.*, 125 Ga. App. 404, 406 (2) (b) (188 SE2d 108) (1972). The jury made this determination in favor of Noggle, and we find no error.

(b) Another argument advanced by Willis in support of its contention that no warranty exists is that the defects were latent and therefore not of such a nature as to be readily ascertainable to the eye of either the buyer or seller. Undisclosed latent defects, however, are the very evil that the implied warranty of merchantability was designed to remedy. An implied warranty protects the buyer against latent defects that are not discoverable by the exercise of caution on his part. *Moore v. Berry*, 217 Ga. App. 697 (458 SE2d 879) (1995). While an implied warranty will not avail against patent defects or latent defects that are disclosed or are discoverable by the exercise of caution on the part of the purchaser, *Keaton v. A.B.C. Drug Co.*, 266 Ga. 385, 386-387 (1) (c) (467 SE2d 558) (1996), Willis does not dispute that the granite had no patent or obvious defect that would have been readily apparent to Noggle. Noggle presented evidence that the granite contained a latent defect that was not discoverable until after the granite blocks were cut open, polished, and used. Sufficient evidence was presented to raise a jury question as to a latent defect that was covered under an implied warranty of merchantability.

3. Willis also contends that the granite blocks are not "goods" as that term is intended under the UCC, asserting that goods must be "manufactured" in order to fall within the scope of the UCC and the implied warranty of merchantability in OCGA § 11-2-314. This contention, while raising an issue of first impression in Georgia, is wholly without merit.

Whether a product is manufactured is not the touchstone of analysis under the UCC. The test is whether the goods are "movable

at the time of identification to the contract." OCGA § 11-2-105 (1). See also *PCS Joint Venture, Ltd. v. Davis*, 219 Ga. App. 519, 520 (1) (465 SE2d 713) (1995). The term "goods" includes many nonmanufactured items. See *Zepp v. Mayor &c. of Athens*, 180 Ga. App. 72 (348 SE2d 673) (1986) (sale of water is a sale of goods under UCC). Indeed, OCGA § 11-2-107, relating to goods severed from real estate, specifically includes within its purview the term "mineral," which is clearly broad enough to encompass the granite blocks at issue in this case. Other jurisdictions have reached similar conclusions. See, e.g., *Luedtke Engineering Co. v. Indiana Limestone Co.*, 592 FSupp. 75, 79 (S.D. Ind. 1983) (limestone blocks); *Blue Rock Indus. v. Raymond Intl.*, 325 A2d 66 (Me. 1974) (sand).

The Georgia cases cited by Willis are inapposite. *Presto v. Sandoz Pharmaceuticals Corp.*, 226 Ga. App. 547 (487 SE2d 70) (1997), deals with the "learned intermediary" doctrine in an action against the manufacturer and distributor of a prescription drug.[3] Contrary to Willis's contention, it does not hold that manufacturing is required before a warranty attaches, or that the drug was not a manufactured product. It simply states that the implied warranty of merchantability was inapplicable because the defendant did not prescribe or manufacture the drug. Id. at 551. In *Presto v. Charter Peachford &c.*, 229 Ga. App. 576 (494 SE2d 377) (1997), this Court likewise held that a hospital was not liable under the implied warranty of merchantability for alleged defects in a drug because it neither manufactured nor prescribed it. Id. at 577.

Because the granite blocks sold in this case were movable at the time of identification to the contract, they are "goods" as that term is intended under OCGA § 11-2-105 (1). We therefore find that the agreement to sell the granite is governed by Article 2 of the Uniform Commercial Code, and an implied warranty of merchantability applies.

4. We next consider Willis's enumeration of the general grounds. As correctly noted by Willis, " '[t]he standard of appellate review of a trial court's denial of a directed verdict motion is the "any evidence" standard. [Cits.]' " *Brackett v. Cartwright*, 231 Ga. App. 536, 538 (2) (499 SE2d 905) (1998). The standard for the denial of a motion for a new trial is virtually the same, as an "appellate court will not disturb the trial court's refusal to grant a new trial if there is any evidence at all to support the verdict, however slight, and regardless of what may be the character of the witnesses." (Punctuation omitted.) *Sykes v. Sin*, 229 Ga. App. 155, 159 (4) (493 SE2d 571) (1997).

---

[3] In any event, this doctrine was applied in *Presto* to the implied warranty of fitness for a particular purpose, not to the implied warranty of merchantability. Id. at 551.

"A motion for directed verdict should be granted only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a particular verdict. All evidence must be construed most favorably to the non-movant. Before the trial court can direct a verdict for the movant, he must find from the evidence that there is *no evidence of any kind* supporting the nonmovant's position." (Citations and punctuation omitted.) *Quality Control Elec. v. Electronic Security Svcs. Co.*, 225 Ga. App. 671-672 (484 SE2d 696) (1997).

Examined in the light most favorable to the verdict and judgment, the record shows that Noggle positively identified Willis's quarry as the source of granite that became discolored after being made into monuments. Other monument makers also identified Willis as the source of granite that became discolored after sale. Moreover, Noggle testified that Willis's stones were the only ones he was using at the time the monuments in question were made. Noggle presented evidence of the sums expended in replacing monuments and the anticipated costs of replacing other monuments made from the same stone, in the amount of approximately $63,000. Evidence was also presented of approximately $469,000 in lost sales because of concerns about the discolored granite.

" 'On appeal, we construe all evidence most strongly in support of the verdict, for that is what we must presume the jury did; and if there is evidence to sustain the verdict, we cannot disturb it. Since the verdict was within the range of damages established by the evidence, there was no error.' " *Evans v. Willis*, 212 Ga. App. 335, 339 (5) (441 SE2d 770) (1994). We are satisfied that the judgment and verdict are amply supported by competent evidence of record.

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED NOVEMBER 24, 1998 —
RECONSIDERATION DENIED DECEMBER 14, 1998.

*Smith & Hodges, Truett Smith*, for appellant.
*Cynthia G. Weaver*, for appellee.

