[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10619
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-01214-JPB

YAHAZIA ODELIA,

Plaintiff - Appellant,

versus

ALDERWOODS (GEORGIA), LLC,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 5, 2020)

Before MARTIN, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Yahazia Odelia appeals the district court's grant of summary judgment in favor of Alderwoods (Georgia) LLC on her claims for breach of contract, fraud, negligence, and intentional infliction of emotional distress. She raises several arguments on appeal. First, she contends that the district court lacked diversity jurisdiction because the amount in controversy did not exceed $75,000. Second, she claims that the district court improperly concluded that the statute of limitations barred her breach of contract claim. Third, she asserts that the district court erred in ruling that Alderwoods made no false representations to her. Fourth, she argues that the district court erred in holding that the economic loss rule precluded recovery on her negligence claim. Fifth, she maintains that the district court erred in concluding that Alderwoods' conduct did not reach the high level of outrageousness required to survive summary judgment. Following review of the record and parties' briefs, we affirm.

**I**

Alderwoods owns and operates the Kennedy Memorial Gardens Cemetery in DeKalb, Georgia. On September 25, 2002, Ms. Odelia purchased two side-by-side burial plots at the cemetery—Lot U, Space 15, and Lot U, Space 16. Space 15 was conveyed to Ms. Odelia under Retail Installment Contract No. 1007905, and Space 16 was conveyed to her under Retail Installment Contract No. 1007904. Two days later, Ms. Odelia buried her sister, Evelyn Geeder-Jones, in Space 16. Ms. Odelia

reserved Space 15, and paid $655.50 for the burial of her mother, Lucy Mae Hammonds, when such need arose. At her deposition, Ms. Odelia testified that she did not remember any conversations she had with the Alderwoods representative regarding the sale of either of the burial plots.

Despite the fact that it had conveyed Space 15 to Ms. Odelia, on April 21, 2005, Alderwoods re-sold it to another party, who buried the remains of Odell Allen in the plot. After Ms. Odelia's mother passed away on February 24, 2016, Alderwoods discovered that it had re-sold Space 15 and that Mr. Allen's remains were buried there. Alderwoods notified Ms. Odelia of the problem, and sought an order from a Georgia court authorizing it to disinter Mr. Allen's remains from Space 15, so that the plot would be available for Ms. Odelia's mother. The state court issued the order on April 4, 2016.

Ms. Odelia's mother was buried in Space 15 on June 5, 2017, about 14 months after the state court issued the order to disinter Mr. Allen's remains. Alderwoods waived any fees associated with the burial of Ms. Odelia's mother.

Ms. Odelia alleges that the delay in burying her mother after Space 15 became available was due to Alderwoods' attempt to induce her to sign legal documents releasing it from liability. She says that Alderwoods first attempted to get her to sign the release of liability papers during her mother's wake. She claims that Alderwoods tried a second time, after Mr. Allen's remains had been disinterred and

she was preparing a gravesite memorial for her mother.  She refused to sign the papers without first being able to review them with an attorney.  As a result, Alderwoods refused to bury her mother at the scheduled time, and she had to cancel the gravesite memorial.

On November 2, 2017, Ms. Odelia's attorney sent Alderwoods a detailed settlement offer, which asked for $200,000 in exchange for a complete release of all claims.  The negotiations led nowhere and on February 21, 2018, Ms. Odelia filed a complaint in Georgia state court asserting claims against Alderwoods for breach of contract, fraud, negligence, and intentional infliction of emotional distress.  On March 22, 2018, Alderwoods removed the case to federal district court.  After discovery, the district court entered summary judgment in favor of Alderwoods on all of Ms. Odelia's claims.

## II

Ms. Odelia argues that the amount in controversy in this case did not exceed $75,000 and, thus, the district court lacked subject-matter jurisdiction.  "Because we are obligated to notice the district court's lack of subject matter jurisdiction if such is the case," we start by addressing Ms. Odelia's jurisdictional argument.  *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) (citing *Williams v. Best Buy Co.*, 269 F.3d 1316, 1318 (11th Cir. 2001)).

The district court independently appraised Ms. Odelia's complaint and Alderwoods' notice of removal and concluded that the amount in controversy was met. We review this determination *de novo*, s*ee Mutual Assurance, Inc. v. United States*, 56 F.3d 1353, 1355 (11th Cir. 1995), and agree with the district court.

The district court's subject-matter jurisdiction was premised on diversity of citizenship. Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

"Dismissal of a case brought under 28 U.S.C. § 1332 is proper where the pleadings make it clear 'to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Leonard*, 279 F.3d at 972. (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). "Where a plaintiff fails to specify the total amount of damages demanded, as is the case here, a defendant seeking removal based on diversity jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional requirement." *Id.*

"In some cases, this burden requires the removing defendant to provide additional evidence demonstrating that removal is proper." *Roe v. Michelin N. Am. Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010). A settlement offer constitutes evidence that the district court may consider in determining whether the amount in

5

controversy is met. *See Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1212 n. 62 (11th Cir. 2007). In making its determination, the district court can consider a claim of punitive damages as well. *See Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987).

We agree with the district court that the value of Ms. Odelia's claims more likely than not exceeded $75,000. Ms. Odelia sought to recover damages stemming from breach of contract, fraud, negligence, intentional infliction of emotional distress, and punitive damages. It is hard to imagine that the combined sum of all those claims, plus the punitive damages sought, would not exceed $75,000. Indeed, Alderwoods attached to its removal notice Ms. Odelia's detailed settlement letter, which valued the claims at $200,000. That valuation, by Ms. Odelia herself, tends to show that the amount in controversy was met.

Ms. Odelia also argues that, according to Alderwoods, her damages were limited to $655.50—the price of the contract—and that as a result Alderwoods admitted that the amount in controversy did not exceed $75,000. We reject this contention because Alderwoods argued only that Ms. Odelia's damages for the breach of contract claim should be limited to $655.50. Ms. Odelia, as noted, asserted additional claims for fraud, negligence, and intentional infliction of emotional distress, which would potentially increase the sum of her total damages. Because it

6

is more likely than not that the sum all of Ms. Odelia's claims exceeds $75,000, we conclude that the district court properly concluded that it had diversity jurisdiction.

## III

On the merits, Ms. Odelia contends that the district court improperly granted summary judgment in favor of Alderwoods on her breach of contract, fraud, negligence, and intentional infliction of emotional distress claims. We disagree.

We exercise plenary review over a district court's grant of summary judgment. *See Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). In doing so, we review all the evidence and draw all reasonable evidence in the light most favorable to the non-moving party. *See id.* The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute of any material fact and that it is entitled to judgment as a matter of law. *See id.* "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

## A

Ms. Odelia asserts that the district court erred in concluding that the statute of limitations barred her breach of contract claim. We are not persuaded.

"Under O.C.G.A. § 9–3–24, an action for breach of a written contract must be brought within six years of the breach." *Hamburger v. PFM Capital Mgmt., Inc.*, 649 S.E.2d 779, 782 (Ga. Ct. App. 2007). "[T]he statute of limitations runs from the time the contract is broken 'and not at the time the actual damages results or is ascertained.'" *Space Leasing Assocs. v. Atlantic Bldg. Sys.*, 241 S.E.2d 438, 441 (Ga. Ct. App. 1977) (quoting *Mobley v. Murray Cty.*, 173 S.E. 680, 684 (Ga. 1934)). Under Georgia law, "the true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result." *Godwin v. Mizpah Farm, LLLP*, 766 S.E.2d 497, 502 (Ga. Ct. App. 2014).

Here, the alleged breach of contract occurred when Alderwoods sold Space 15 to Mr. Allen's family in April of 2005, and the statute of limitations began to run at that time: "[w]ith respect to a contract claim, the statute of limitations runs from the time the contract is broken rather than from the time the actual damage results or is ascertained." *Hamburger*, 649 S.E.2d at 782 (internal quotation and citation omitted). Ms. Odelia filed her complaint in February of 2018, almost 13 years after Alderwoods' alleged breach. Thus, the six-year statute of limitations bars her breach of contract claim. *See* O.C.G.A. § 9–3–24.

Ms. Odelia argues that the discovery rule should apply to her breach of contract claim, which would mean that the statute of limitations began to run when

she discovered that Alderwoods breached the contract.  She further asserts that not applying the discovery rule to her case would be illogical because she had no way of finding out that Alderwoods had breached the contract until she tried to bury her mother in February of 2016.

We are sympathetic to Ms. Odelia's predicament, but Georgia courts have continuously held that the discovery rule does not apply to breach of contract claims. *See Owen v. Mobley Constr. Co., Inc.*, 320 S.E.2d 255, 256 (Ga. Ct. App. 1984) (refusing to apply the discovery rule in a breach of contract claim); *Moore v. Dep't of Human Res.*, 469 S.E.2d 511, 512–13 (Ga. Ct. App. 1996) (same).  In dealing with cases where the plaintiff has not discovered the breach of contract after the statute of limitations has run out, Georgia courts have held that "[m]ere ignorance of the facts constituting a cause of action does not prevent the running of the statute of limitation."  *Millard Matthews Builders, Inc. v. Plant Improvement Co., Inc.*, 307 S.E.2d 739, 740 (Ga. Ct. App. 1983) (quotations marks omitted).[1]

Other state courts have reached the same result when considering similar factual scenarios.  *See e.g.*, *Jakeman v. Lawrence Grp. Mgmt. Co., LLC*, 151 So. 3d 1083, 1090–91 (Ala. 2014) (concluding that the cause of action accrues at the time

---

[1] Only a few states have extended the application of the discovery rule to breach of contract claims. *See e.g.*, *Boyd v. Bowen*, 806 A.2d 314, 333 (Md. Ct. Spec. App. 2002) (explaining that Maryland courts extended the discovery rule to all causes of actions).  We, however, must apply Georgia law to this case. *See Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009) (explaining that, in diversity cases, we must apply state substantive law).

of the breach, i.e., when the plot is improperly resold); *Hardin v. York Mem'l Park*, 730 S.E.2d 768, 775 (N.C. Ct. App. 2012) (same).  We therefore conclude that the discovery rule does not apply to Ms. Odelia's breach of contract claim.

Ms. Odelia next claims that the Uniform Commercial Code governs the sale of a cemetery plot and that the statute of limitations for the sale of goods, O.C.G.A. § 11–2–725, should apply.  To determine whether a contract qualifies as a sale of goods under the UCC, Georgia courts ask "whether the goods are movable at the time of identification to the contract." *Willis Mining, Inc. v. Noggle*, 509 S.E.2d 731, 733 (Ga. Ct. App. 1998); O.C.G.A. § 11–2–105(1).  Here, a cemetery plot is not movable and thus falls outside the UCC's definition of goods.

In addition, a century of caselaw belies Ms. Odelia's UCC argument.  Georgia courts uniformly treat the sale of a cemetery plot as an easement or a license.  *See Jacobus v. Congregation of Children of Israel*, 33 S.E. 853, 854 (Ga. 1899) (stating that the acquisition of cemetery plot constitutes an easement or a license); *Walker v. Ga. Power Co.*, 339 S.E.2d 728, 730 (Ga. Ct. App. 1986) (holding that "one who owns or has an interest in a cemetery for burial purposes does not acquire any title to the soil, but only an easement or license for the use intended").

In sum, the district court did not err in concluding that the statute of limitations barred Ms. Odelia's breach of contract claim.

10

**B**

Ms. Odelia contends that the district court erred in granting summary judgment in favor of Alderwoods on her fraud claim because it wrongly concluded that Alderwoods did not make false representations to her. Again, we disagree.

To prevail in a fraud claim under Georgia law, a plaintiff must prove "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Crawford v. Williams*, 375 S.E.2d 223, 224 (Ga. 1989). "In actions for fraud, actionable representations must relate to past or existing facts and cannot consist of mere broken promises." *Ga. Mobile Home Dev. Corp. v. Kuter*, 168 S.E.2d 858, 861 (Ga. Ct. App. 1969) (quotations marks omitted). Moreover, "[a] mere breach of a contract is not fraud." *Id*.

Here, the record shows that Ms. Odelia could not remember any representations, false or not, that the Alderwoods representative made to her at the time she bought Space 15. It is also undisputed that Space 15 was available at the time Ms. Odelia bought it, which indicates that Alderwoods did not misrepresent its availability at the time of the contract. Under the circumstances, it is impossible to say that Alderwoods engaged in fraud given that Ms. Odelia cannot identify a single misrepresentation made to her when she entered into the contract. *See Riverbend*

11

*Ford–Mercury Inc. v. Kirksey*, 395 S.E.2d 898, 900 (Ga. Ct. App. 1990) (concluding that the plaintiff could not prove fraud because he was not given false information by the defendant).  That Alderwoods may have later breached the contract is not, by itself, enough to establish fraud.  *See Kuter*, 168 S.E.2d at 861.

Ms. Odelia argues that the question of whether Alderwoods made a false representation at the time she bought Space 15 should be left to the jury.  She cites to *Central Chevrolet, Inc. v. Campbell*, 198 S.E.2d 362 (Ga. Ct. App. 1973), to support her argument.  But in *Central Chevrolet*, there was a clear misrepresentation—the seller had sold a 1963 Corvette and represented it as a 1967 Corvette.  *Id*. at 363.  The court sent the case to the jury to determine whether there was intent to defraud.  *Id*. at 364.  In this case, the question is not about intent, but rather whether Alderwoods misrepresented the availability of Space 15 to Ms. Odelia in the first place.  And the record shows that no false representation was made because Space 15 was available at the time she acquired it in 2002.

We agree with the district court that Alderwoods did not make any false representation to Ms. Odelia.  Summary judgment on the fraud claim was therefore appropriate.

**C**

12

Next, Ms. Odelia asserts that the district court erred in granting summary judgment in favor of Alderwoods on her negligence claim based on the economic loss rule.

In Georgia, the economic loss rule limits the ability of contracting parties to sue one another for negligence and is used "to distinguish between those causes of action that may be brought only in a contract [ ] action and those that give rise to an action in tort." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 948 (11th Cir. 1982). Georgia courts generally do not allow contracting parties to bring negligence claims for purely economic losses against one another. *See Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*, 608 S.E.2d. 636, 637 (Ga. 2005). Accordingly, the economic loss rule bars recovery in tort when a plaintiff who has entered in a contract does not suffer injury to his person or damage to his property. *See id.* Here, Ms. Odelia does not allege any injury to herself or her property, and thus the economic loss rule bars her negligence claim.

There are, however, exceptions to the economic loss rule, and Ms. Odelia asserts that two of them apply here. *See Advanced Drainage Sys., Inc. v. Lowman*, 437 S.E.2d 604, 607 (Ga. Ct. App. 1993). First, there is "the accident exception, which allows a plaintiff to recover in tort when there is a sudden and calamitous event that not only causes damage to the product but poses an unreasonable risk of injury to persons and other property." *Id.* (citations omitted). Second, under the

misrepresentation exception, "one who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence." *Robert & Co. Assoc. v. Rhodes–Haverty P'ship*, 300 S.E.2d 503, 504 (Ga. 1983). In order to establish the second exception, the plaintiff has to prove the five elements of fraud. *See Advanced Drainage Sys. Inc.*, 437 S.E.2d at 607.

Starting with the accident exception, Ms. Odelia argues that the subsequent sale of Space 15 to Mr. Allen's family was the type of incident that the accident exception is designed to cover. But her argument is not persuasive because Georgia courts have only invoked the accident exception where a person or property is put in foreseeable danger, and Ms. Odelia does not explain how the subsequent sale of Space 15 created an unreasonable risk of danger to herself or to her property. *See Vulcan Materials Co., Inc. v. Driltech Inc.*, 306 S.E.2d 253, 257 (Ga. 1983) (holding that "[a]n 'accident' should be defined as a sudden and calamitous event which, although it may only cause damage to the defective product itself, poses an unreasonable risk of injury to other persons or property"). As a result, we do not believe that the accident exception applies in this case.

Ms. Odelia fares no better with respect to the misrepresentation exception. As discussed above, the record shows that Alderwoods did not make any false

representations to Ms. Odelia when it sold her Space 15.  She therefore cannot establish fraud and the misrepresentation exception therefore does not apply.[2]

Because none of the economic loss rule's exceptions apply to Ms. Odelia's negligence claim, we conclude that the district court properly granted summary judgment in favor of Alderwoods.

**D**

Finally, Ms. Odelia claims that the district court improperly granted summary judgment in favor of Alderwoods as to her claim for intentional infliction of emotional distress.  We reject her argument.

To succeed on an intentional infliction of emotional distress claim in Georgia, a plaintiff must prove "(1) intentional or reckless conduct; (2) that is extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress."  *Renton v. Watson*, 739 S.E.2d. 19, 26 (Ga. Ct. App. 2013) (quotations omitted).  "Liability for this tort has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

---

[2] On appeal, Ms. Odelia also argues that Alderwoods is liable on negligence *per se* grounds.  We do not reach this argument because this is not the same argument that she presented in the district court.  In her brief in opposition to the motion for summary judgment, she did not assert negligence *per se*; instead she argued that Alderwoods had a legal duty arising under § 590-3-1-.15 of the Georgia Administrative Code and that, because Alderwoods violated that regulation, the economic loss rule did not apply.  *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (declining to reach an argument raised on appeal for the first time).

utterly intolerable in a civilized community." *Yarbrough v. SAS Systems Inc.*, 419 S.E.2d 507, 509 (Ga. Ct. App. 1992) (quotations omitted). Whether a claim meets "the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." *Frank v. Fleet Finance, Inc. of Ga.*, 518 S.E.2d 717, 720 (Ga. Ct. App. 1999).

The district court concluded that Alderwoods' conduct did not meet the level of outrageousness required to satisfy the tort of intentional infliction of emotional distress. It found that Alderwoods (1) attempted to remedy the situation by acquiring a court order to disinter Mr. Allen so that Ms. Odelia's mother could be buried in Space 15, and (2) waived the associated burial fees.

Ms. Odelia argues that Georgia courts have found the existence of intentional infliction of emotional distress in less egregious or outrageous cases than her own. First, she cites to *Stephens v. Waits*, 184 S.E. 781, 782 (Ga. Ct. App. 1936), a case in which a burial was interrupted by someone who sat in the casket and threatened, using an iron pick, to strike anyone trying to bury the deceased. Second, she cites to *Delta Finance Company v. Ganakas*, 91 S.E.2d 383, 385 (Ga. Ct. App. 1956), a case where the defendant, in an attempt to collect a debt, went to the plaintiff's house to repossess a television set knowing that an eleven-year-old would be alone, threatened the child with calling the police, and attempted to break into the house several times. *See id.*

16

Although we empathize with Ms. Odelia's unpleasant experience in attempting to bury her mother, we do not think that there was willful or wanton threat of violence here. The cases she cites are distinguishable on their facts. And Alderwoods' conduct did not rise to the level of outrageousness required to satisfy the tort of intentional infliction of emotional distress.

In support of her claim for intentional infliction of emotional distress, Ms. Odelia relies on the two specific actions by Defendants to induce her to sign purported release-of-liability papers.

First, two Alderwoods employees came to the wake for Ms. Odelia's mother and spoke to a funeral director there, who in turn came to the area where the wake was taking place and told Ms. Odelia that the two were there for her to sign some papers, thus disrupting her during the service while someone was singing and while she was grieving. Ms. Odelia told the two Alderwoods employees that she could not talk right then, and she said during her deposition that did not see or sign the documents.

Second, one of those same Alderwoods employees later told Ms. Odelia about a week before the rescheduled graveside service for her mother that Ms. Odelia needed to sign some papers, which Alderwoods would fax to her so that her lawyer could review them. Ms. Odelia never received a fax; instead, the night before the rescheduled service, the Alderwoods employee called her while she was at dinner

17

with family and offered to bring her the documents to sign then. Ms. Odelia responded that she needed her lawyer to review them, and the employee then, in a "cold" manner, told her that the burial could not take place the next day without the signed papers. Ms. Odelia was informed a week in advance of the rescheduled service that the papers needed to be signed, and she knew that she wanted her lawyer to review them. As with the documents at the wake, Ms. Odelia stated during her deposition that she did not know what the papers were, and it is undisputed that the burial took place without her ever signing the referenced papers. Thus, her signature on any such documents was not a prerequisite to her mother's burial.

These actions by the Alderwoods were certainly lacking in sensitivity toward a grieving daughter, and it is unfortunate that Ms. Odelia had to experience them. But they do not rise to the level of outrageousness discussed in *Stephens* and *Delta Finance Company*. In sum, Alderwoods took corrective action as soon as it learned of its mistake, waived the burial fees, and eventually buried her mother in Space 15.

Because we conclude that Alderwoods' conduct did not meet the very high bar established in cases like *Stephens* and *Delta Finance Company*, the district court did not err in granting summary judgment in favor of Alderwoods on Ms. Odelia's intentional infliction of emotional distress claim.

**IV**

We affirm the district court's grant of summary judgment in favor of Alderwoods as to all of Ms. Odelia's claims.

**AFFIRMED.**